IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

AT THE SPECIAL TERM THEREOF, HELD AT WHEELING,
IN THE COUNTY OF OHIO, COMMENCING ON THE
EIGHTH DAY OF OCTOBER, 1879, AND
ENDING ON THE TWENTIETH
DAY OF DECEMBER, 1879.

---

## Wheeling.

BOGGESS *v.* MEREDITH *et al.*

*(Absent, HAYMOND, JUDGE.)

Decided November 1, 1879.

1. An actual ouster of one tenant in common cannot be presumed, except where the possession has become tortious and wrongful by the disloyal acts of the co-tenant, which must be open, continued and notorious, so as to preclude all doubt of the character of his holding or the want of knowledge thereof by his co-tenant. This conduct must amount to a clear, positive and continued disclaimer and disavowal of his co-tenant's title, and an assertion of an adverse right; and a knowledge of this must be brought home to his co-tenant.

| 16 | 1 |
|---|---|
| 44 | 242 |
| 44 | 430 |
| 44 | 666 |
| 16 | 1 |
| e53 | 528 |

1879
Special Term.

Boggess
v.
Meredith *et al.*

| 16 | 1 |
|---|---|
| 58 | 375 |
| 16 | 1 |
| 59 | 673 |
| 16 | 1 |
| f61 | 456 |

---

*Declined to sit by reason of relationship to one of the parties.

2. If one tenant in common sells and conveys to a stranger, without the knowledge or consent of his co-tenant, the entirety or an undivided moiety of a portion of the land defined by boundaries, such sale and conveyance does not make such stranger a co-tenant in the lot purchased with the other co-tenant of the entire tract, so as to give an absolute right to have a portion of it assigned to him.

3. Under such circumstances a court of equity ought in making the partition of the entire land to require as parties in the suit, not only the original co-tenants of the entire tract, but also the purchaser of a part of the land from one of these co-tenants, and ought to assign to this purchaser the parcel of land bought by him, if he purchased the entirety, or a moiety of it, if he purchased but a moiety, and consider the part so assigned as a portion of the share of the co-tenant who sold the land, if this can be done with justice to the other co-tenant, or if he assents thereto ; and the whole residue of the tract not so assigned to the purchaser should be partitioned according to their respective rights among the co-tenants of the entire tract.

Appeal from a decree of the circuit court of the county of Upshur, rendered on the 21st day of September, 1866, in a cause in chancery in said court then pending, wherein Henry Boggess was plaintiff and John S. Meredith and others were defendants, allowed upon the petition of said Meredith.

Hon. R. Irvin, late judge of the sixth judicial circuit, rendered the decree appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case :

Jonathan Furbee of the State of Delaware died about 1796 seized of a tract of land in Upshur county in this State, leaving two heirs, Nathaniel Furbee and Mary Furbee, who afterwards intermarried with Jonathan Jarrel, who died in 1833. On May 7, 1808, Nathaniel Furbee and his wife sold and conveyed with special warranty of title all their estate, right, title, interest, property, claim and demand in and to said tract of land to Benjamin Dill. The deed recites the ownership of the land by Jonathan Furbee, the father of Nathaniel

Furbee, and his death leaving Nathaniel Furbee his son. But it does not say he left no other child, or that Nathaniel Furbee was his sole heir, nor does it in any manner state what was the interest of Nathaniel Furbee in this land, which was sold and conveyed. This deed was made and acknowledged in the State of Delaware. Dill had this land divided into eighteen lots, and by agents, who were empowered to convey, sold and conveyed eight lots, portions of this tract of nine thousand acres, to sundry parties between October 16, 1817, and April 21, 1829. These deeds were with warranty of title; and some of them recited that the nine thousand acres had been conveyed by Jonathan Furbee and by Nathaniel Furbee, his heir, to Benjamin Dill; others improperly stated that this land had been conveyed to Nathaniel Furbee instead of to his father. Mary, the sister of Nathaniel Furbee, after her husband's death in 1833, on March 15, 1841, conveyed all her interest in said tract of nine thousand acres with general warranty of title to James Furbee. This deed was executed in the State of Delaware, where she lived.

James Furbee immediately instituted a suit in the circuit court of Lewis, in which county a part of the land lay, against the heirs of Benjamin Dill for a portion of said land, stating in the bill that they claimed the whole of this land. The bill also states that some of these purchasers from Dill had been in possession of the land they bought more than twenty years, and that the balance of the land not sold was not in the possession of any party. The heirs of Dill were stated to live in Delaware and Pennsylvania. In an amended bill it was stated that more than a moiety in value of this land had been sold by Dill; and it makes the vendees of Dill and the purchasers from them parties defendant, and asks an equal partition of this land. A number of these purchasers filed answers to this suit, claiming the land by adversary possession for more than twenty years, and that taxes had been paid on said land by Dill and his vendees for more than that length of time.

1879
Special Term.

Boggess
v.
Meredith et al.

On October 1, 1845, the court decreed that the defendants, who had purchased these parcels of land from Benjamin Dill, or their vendees, should hold the same; and the complainant, James Furbee, was assigned the residue of this tract of nine thousand acres; and deeds with special warranty of title were accordingly directed to be made by a commissioner of the court to the complainant and defendants respectively.

James Furbee had on April 22, 1841, sold and conveyed his undivided moiety of said nine thousand acres of land to Henry Boggess, and he after this decree and prior to 1854, had sold and conveyed a portion of said land, assigned to his vendor, to divers parties.

But Benjamin Dill did not, as was assumed in this bill for partition, die intestate, but made a will, whereby he left all this Virginia land to divers of his children and grandchildren. This will was made in 1829, and was recorded in Delaware, where he died in 1836. In 1854, these devisees in his will instituted four several suits against the purchasers by and under Henry Boggess, who was the vendee of James Furbee, for portions of said land which had been assigned to James Furbee by this decree of October 1, 1845. These devisees claimed that they were not parties to this suit and therefore not bound by this decree; and in point of fact but few of them were parties, and most of them were described by wrong names, the females having married and changed their names; and all of them had been proceeded against by publication, process having been served on none of them.

In 1855 Henry Boggess brought the present suit in the circuit court of Upshur, where a part of the land lies. In his bill and amended bill and the large number of exhibits filed with them the above facts are stated in much detail, and the bill then proceeds thus:

"Said Dill in his lifetime did sell and convey, with covenants of general warranty, one equal half (in quantity and quality) of said nine thousand acres of land,

which half was all he was entitled to therein, and that said James Furbee was entitled to the residue of said tract by purchase from said Mary Jarrell as heir of *Nathaniel Furbee;* and, therefore, were said devisees to succeed in recovering from your orator and his vendees, &c., one half of the lands embraced in said lots numbers one, two, three, four, five, six, eight, thirteen, seventeen and eighteen, (which is all they expected to recover, as your orator and his vendees, they acknowledge, are entitled to the remaining undivided half of said lots,) your orator and his vendees would be entitled upon the same principle and by the same law to recover one half of the said lots numbers seven, nine, ten, eleven, twelve, fourteen, fifteen, sixteen, sold by said Dill, as aforesaid, which would result in a breach of the covenants of warranty, the deed of conveyance from said Dill to his said vendees, who would thereupon have a cause of action over against said Dill's said heirs or devisees for such breach of said warranty, and a right to subject the land so recovered by said devisees from your orator and his vendees out of said lots numbers one, two, &c., for the satisfaction of the damages they (said Dill's vendees) would be entitled to for such breach of warranty, &c., which would at last only result in a multiplicity of suits to no purpose, as what would be gained by said devisees in one suit, they would lose in another. Therefore your orator prays that all the controversies and suits aforesaid and their consequences may be avoided by a confirmation of the partition of said nine thousand acres of land heretofore made in the chancery suit aforesaid, as heretofore designated, to which end he prays that the aforesaid persons, who are now in possession of and own the said lots numbers seven, nine, ten, eleven, twelve, fourteen, fifteen and sixteen, as aforesaid, under said Benjamin Dill, deceased, and the aforesaid vendees of said Benjamin Dill, deceased, to wit, those heretofore named, and Susan Meredith, widow of Henry Meredith and daughter of Benjamin Dill, deceased, and the un-

1879
Special Term.

Boggess
v.
Meredith et al.

known children and heirs of William Dill, deceased, and Mary, Eliza, John E., Ruth Ann J., Alfred, Philip E. and Philena Newsom, children of Ruth Ann Newsom, deceased, in her lifetime the wife of Alfred Newsom, and daughter of Mary Emerson, those who have not yet sued, but are preparing so to do, as the others have already done, and who, with those named, constitute the whole of the devisees of the said Benjamin Dill, deceased, now living, be made parties defendant to this bill and be required to answer the same under oath ; and the premises being heard and considered, your orator prays for a decree confirming the partition aforesaid of said nine thousand acres of land as aforesaid, and in the event that that shall be refused or be deemed impracticable or inexpedient, then your orator prays for a partition of the whole tract in accordance with the true legal and equitable rights of the several owners thereof, and that he have such other further and general relief in the premises as may be necessary, just and proper, and as in duty bound, he will ever pray, &c. Copies of the several deeds, conveyances, decrees, papers in suits, &c., and records heretofore mentioned or alluded to, are here filed and marked 1, 2, 3, 4, 5, 6, 7, 8, 9, 10," &c.

Many other parties were made defendants by the amended bill ; so that finally there appears to have been brought before the court all the devisees of Benjamin Dill and all the heirs or parties claiming under them and all the vendees of Benjamin Dill and all parties claiming under them. The prayer of the amended bill is as follows:

"Your orator, therefore, prays that the aforesaid devisees of Benjamin Dill, and the descendants of those who are dead, and the husbands of such of them as are married, be made defendants to this bill and the original aforesaid, and that they be required to answer the same under oath, and also that the devisees of said Benjamin Dill and those claiming under them, named as defendants in the said original bill, be made defendants to thi

bill and be required to answer the same under oath. And your orator further prays that in the event that the writs of ejectment in the said original bill mentioned should be decided against the defendants therein, before this cause is finally heard, an injunction be granted to stay execution upon the judgment against said defendants in said writs of ejectment, until this cause can be finally heard and decided."

A large number of the devisees of Benjamin Dill and parties claiming under them file an answer, in which they state :

" Respondents believe and charge that said Mary Jarrell with her husband, the said Jonathan Jarrell, did convey or in some manner transfer to the said Nathaniel Furbee, before the said conveyance by him to the said Benjamin Dill, or to the said Benjamin Dill soon afterward, all the interest of her, the said Mary Jarrell, in the said nine thousand acres of land ; though respondents have not as yet been able to find any such conveyance or written transfer.   Respondents will notice some of the circumstances that create such presumption : They believe and charge that the said Benjamin Dill, from the time of the said conveyance by the said Nathaniel Furbee to him till the time of his death, claimed the said land entirely as his own, except that he did not claim the said parts thereof sold by him, as will be hereinafter, stated, after he had sold them ; that very soon after the said conveyance the said land was entered on the commissioner's books in the name of the said Benjamin Dill alone and charged in his name alone and continued so charged with the taxes, and he, by his agents, paid all the taxes thereon from that time till about the time of his death ; that the said Benjamin Dill very soon after the said conveyance, by his tenants or agents, took actual possession of the whole of the said land and retained the same for some time, till he sold the parts thereof upon which his improvements were ; that as early as the year 1812, or perhaps earlier, he caused the said

land, except a small part thereof omitted through a mistake as to where the lines thereof or some of them were, to be laid off into eighteen lots, and numbered from one to eighteen inclusive; that he very soon after the said conveyance, and from time to time thereafter till near the time of his death, sent agents from the State of Delaware, where he resided, to the said land to superintend the same and make sales thereof, and employed and empowered others, persons residing in the vicinity of the said land, to do the same; that he did, by his agents, sell and convey parts of the said land to persons, who with those claiming under them have been in possession of the parts so conveyed to them, claiming the *entirety* thereof, ever since their said purchases; many, perhaps most if not all of them, residing on, improving and cultivating the said lands; that several of the powers of attorney from the said Benjamin Dill to the agents aforesaid, and most if not all of the deeds to the persons aforesaid, to whom the said sales were made, and to those claiming under them were recorded; that the said Benjamin Dill and those claiming under him exercised many other acts of ownership on the said land and relative thereto indicative of their claim to the entirety thereof; that the said claim of the said Benjamin Dill and those claiming under him to the entirety of the said land, and many of the said acts indicative thereof, were notorious in the village and country round about where the said Benjamin Dill resided, and in the vicinity of the said land; that the said Mary Jarrell resided within a very few miles of the said Benjamin Dill and very frequently saw him and conversed with him, and so respondents believe and charge that the said Mary Jarrell, from the time of the said conveyance from the said Nathaniel Furbee to the said Benjamin Dill, had notice that the said Benjamin Dill claimed the whole of the said land, and that she knew that he was about to sell and was selling the entirety of parts thereof; yet the said Mary Jarrell, as respondents believe and charge, never until

the time of her conveyance to the said Nathaniel Furbee set up any claim whatever to the said land or any part thereof or interest therein ; never made any objection to the sale of portions thereof or interest therein ; never made any objection to the sale of portions thereof by the said Benjamin Dill, and never manifested the slightest concern about the said land.

"If respondents arc advised correctly as to the effect of the said deed from the said Nathaniel Furbee to the said Benjamin Dill, he the said Nathaniel Furbee warranted the said land to the said Benjamin Dill and his heirs and devisees. The said Nathaniel Furbee was seized of a very considerable real estate, in the county of Kent, in the State of Delaware, and died seized thereof in the year 1833, without children or other descendants, or father or mother living, and respondents believe and charge that the said Mary Jarrell was his only heir, and that the said real estate, of which the said Nathaniel Furbee died seized, descended to the said Mary Jarrell.

"Respondents believe and charge that the said Jonathan Jarrell died in the year 1814 ; that the said Benjamin Dill, having made and published his last will, died in the year 1835, or about that time.  *   *   *   *

"Respondents do not admit that they, or those under whom they claim, were parties to the decree of partition mentioned in the bill.   They deny that they, or those under whom they claim, ever acquiesced in said decree. On the contrary they resided in a distant State, and none of them, respondents believe, had any knowledge thereof till a short time before the institution of the actions of ejectment now pending on the law side of this court for the recovery of parts of the said land."

The purchasers from Henry Boggess and those claiming under him being also made defendants filed answers concurring in the prayer of the bill and admitting the facts stated in it to be true.

The said devisees of Benjamin Dill and those claiming

2

under them by leave of the court filed a further answer, in which they say:

"These respondents say that while they believe that the said Benjamin Dill claimed and in some manner owned the tract of nine thousand acres of land in the bill mentioned, yet they are advised that by the power of attorney of the said Benjamin Dill to William Dill by virtue of which he, the said William Dill, in the year 1839, professed to convey two thousand five hundred acres of the said land to Joel Westfall, and five acres to John Strader, he, the said Benjamin Dill, authorized the said William Dill to convey such interest only in the said land as he, the said Benjamin Dill, in fact had therein, whether that interest was the whole or part of the said land, and these respondents believe and charge, that, if in fact the said Benjamin Dill had but an undivided interest in the said land, the said William Dill had no authority from the said Benjamin Dill to convey, or attempt to convey any greater interest in the said land or any part thereof than the said Benjamin Dill had therein, and these respondents are advised that the said Benjamin Dill and those claiming under him could not in equity or elsewhere be deprived of their interest in the residue of the said land or any part thereof, or be otherwise prejudiced by reason of any attempt by the said William Dill in behalf of the said Benjamin Dill to convey the entirety of any part of the land.

"These respondents charge that the cause of this suit, in whole or in part, if any cause there be, accrued at least thirty-five years before the bringing thereof, or at any rate so long before the bringing thereof, that, as these respondents are advised, the same or the relief sought, in whole or in part, is barred by lapse of time; and these respondents rely thereupon as a bar and defense to the said suit or the said relief, in whole or in part, as the same in equity may constitute such bar or defense."

A great number of depositions were taken in the case. The facts agreed and proven on the part of the plaintiff are those stated in the bill and hereinbefore set forth; also the fact that with the exception of the parcels of land sold by Dill the residue of said nine thousand acres was wild land, unoccupied till it came into the possession of the vendees of Henry Boggess after the decree of partition of the circuit court of Lewis county in 1845; and also the further fact, that his title and that of his vendees were as stated.

The defendants proved their title as stated hereinbefore and that of the numerous vendees of Benjamin Dill. They proved that Benjamin Dill and his agents, whom he sent to Virginia to sell said land, spoke of it to sundry purchasers and other persons as belonging exclusively to said Benjamin Dill; that the said land was entered on the commissioner's books in the name of Benjamin Dill alone, and that he paid the taxes thereon till his death in 1836; that in 1812 he had said land divided into eighteen lots numbered from one to eighteen inclusive, the first fifteen of which contained five hundred acres, and numbers sixteen, seventeen and eighteen, two hundred and seventy-five acres each; that he and his agents sold and conveyed of these lots numbers seven, nine, ten, eleven, twelve, fourteen, fifteen and sixteen, containing three thousand seven hundred and seventy-five acres, which during this suit was valued by commissioner at $15,587.50; that Benjamin Dill did not sell lots numbers one, two, three, four, five, six, eight, thirteen, seventeen and eighteen, nor a slip of land, which by mistake was not included in the division of the land, containing five hundred and forty acres; that the whole amount of land not sold by him was five thousand one hundred and ninety acres, which was however of inferior quality to the land sold, and was valued by these commissioners at $9,213.20;—that he sold about one thousand and five hundred acres of this land in 1817, and the balance that he sold was sold in 1829;—that at different times he executed powers of attorney to different parties authorizing them to sell portions of

this land, specified in some instances, and in others to sell all his right, title and interest in said land; but the deeds made by these attorneys in fact always conveyed definite portions of the land and not merely his right therein; that the parties, to whom these parcels of land were sold, took possession of them, lived upon them, and improved them, and their deeds were generally admitted to record;—that Benjamin Dill, Nathaniel Furbee and Mary Jarrell all lived in the same county in Delaware and within some four miles of each other;—that it was generally known in the county that Benjamin Dill owned this nine thousand acres of land in Virginia and was selling it from time to time.

There is an entire failure to prove by any witness that Mary Jarrell had any knowledge of Benjamin Dill claiming this land and selling it, or anything else which he did in connection with it. She had but little intercourse with either her brother or Dill; and there is no proof by any witness of any communication of any sort between her and her brother, or between her and Dill, on the subject of this land excepting only the statement hereinafter given by one witness, that the said Dill had called on her to buy her interest in this land, and she refused to sell to him.

The defendants proved that Benjamin Dill on July 10, 1788, conveyed to Jonathan Furbee a lot of ground in a village in Delaware;—that on December 31, 1814, Jonathan Jarrell and his wife contracted to sell this lot for $200.00 to a negro, and in the contract it was recited to belong to them, and that on August 10, 1815, a deed was made for this lot to the negro executed by Nathaniel Furbee and Mary Jarrell as heirs of Jonathan Furbee, and one witness proved that prior to 1807 the rents of this lot had been collected by Jonathan Furbee, and after that, but how long after is not stated, it was claimed by Mary Jarrell, and she sold it to this negro; and about 1807 that Nathaniel Furbee told him, he had bought his sister Mary Jarrell's interest in this nine thousand acres

1879
Special Term.

Boggess
v.
Meredith et al.

of land in Virginia, and had given her for it this lot in Delaware; but the witness never heard Mary Jarrell say anything about it, and he did not understand from Nathaniel Furbee, that he had got a deed for his sister's interest in this nine thousand acres of land. This conversation with Nathaniel Furbee was after his return from Virginia in 1807.

But a witness for the plaintiff proves, that after this visit to Virginia in 1807 she heard Nathaniel Furbee say, that Jonathan Jarrell was a dishonest man, always endeavoring to take advantage of him, and he would not try to buy his wife Mary's interest in this land; he would have nothing to do with her interest. Another witness states after his return from Virginia, which he says was in 1803, he told him his sister owned half of this Virginia land. A first cousin of Nathaniel Furbee also testifies to a like statement, and says he never heard anything to the contrary in his life. Another cousin testifies that Nathaniel Furbee told him, he would neither sell his interest to his brother-in-law, Jonathan Jarrell, nor buy his wife's interest in this nine thousand acres of land, as he was a dishonest man, and he would have nothing to do with him, saying at the same time he had a chance of selling his interest to Benjamin Dill, and he intended to do so. This conversation was in Virginia, when Nathaniel Furbee was there, I suppose in 1807; and this witness further says, that he had frequently got letters from relatives in Delaware, and from them he understood Mrs. Jarrell claimed an interest in this land. Another witness says, that Benjamin Dill told him he had bought Nathaniel Furbee's interest in this land, and wanted the witness to persuade Mary Jarrell to sell him her interest. He saw her for Dill; but she refused to sell, and told him that Dill had been at her several times, and she refused to sell to him. Another witness says, she claimed to own this lot, which she afterwards sold the negro, and also half of the nine thousand acres of land. Another says, she always claimed to own

half of this Virginia land, and her claim to this owner-ship was notorious in Delaware, where she lived, and that as late as 1831 or 1832 Benjamin Dill told him, that Mary Jarrell would lose her part of this land from neglect. Another witness testifies, that he heard one of Benjamin Dill's agents to sell this land, when told he would get into trouble with the other heir, say he did not care, so he could sell the land and get the money. And he had often heard another of Benjamin Dill's agents speak of there being another heir for this land. Another witness testifies, that another of the agents of Benjamin Dill told him, that there were two heirs for this land, and Benjamin Dill had bought out but one of them, but that he could buy out the other, if he wanted to do so. Another witness proves, that after the death of Benjamin Dill an agent of his stated, that the heirs would not sell any more land till they got a power from Mrs. Jarrel, who was an heir.

A portion of this testimony for the plaintiff is liable to just criticism; and if the whole of the depositions had been given at length, its strength would be less than the brief statement of it I have made would indicate. But as in my opinion the merits of the case are in no manner dependant on any of these conversations, which are controverted, I have stated them in the briefest manner possible. To have stated these at length would have consumed much space unnecessarily, as the record is very large, occupying nearly four hundred and fifty pages of printed matter. All the facts, that I deem essential, and many, that I deem of little or no importance, have been stated.

The circuit court of Upshur on September 16, 1863, rendered this decree:

"And at another day, to wit, at a circuit court held for Upshur county on the 17th day of May, 1865, this cause came on this day to be heard upon the bill and amended bill, answers of. John S. Meredith and wife, Benjamin D. Anderson, John Lank and wife, William E. Ander-

1879
Special Term.

Boggess
v.
Meredith *et al.*

son, Benjamin Dill, Andrew Dill, Samuel Grace and wife, John Emerson, Susan Mason, Jonathan Emerson, a son of Jonathan Emerson, deceased, Thomas George, Jonathan George, William Lose and wife, Alfred Newsom the elder, Mary Elizabeth Newsom, John E. Newsom, Ruth Ann J. Newsom, Alfred Newsom the younger, Philip E. Newsom and Philip Newsom, Abel Strader, George W. Tenney, A. R. Tenney, Marshall Tenney, Watson Westfall and wife, Simon Strader and wife, William B. Goodin and wife, William Bennett, David Moss, William R. Weatherholt, Western Mills, John Gates, Charles Gates, Charles Demoss, Moses Hornbeck, James Hornbeck, John B. Shipman, John M. Haney, Joel Newsom, Owen Hartley, James M. Hawkins, J. V. Knight, John Demoss, Jared Evans, James Hall, John Leonard, M. Boyles, William F. Haney, William Goodin, E. Goodin, C. M. Goodin, Isaac Strader, Elizabeth Rollins, Thomas Deen, Henry Wilfong, J. Neff, S. Cutright, T. T. Maxon, A. Boyles, J. A. Foster, E. Rollins, and replications thereto; the answer of James B. Emerson and Marinda Emerson by D. S. Haselden, their guardian *ad litem;* the answers of William L. Tenney and Watson Tenney, by James B. McLean, their guardian *ad litem,* and replications thereto; the order of publication duly posted and published against the absent defendants; the bills taken for confessed as to the other defendants; the depositions, exhibits and agreement of facts filed, and was argued by counsel, on consideration whereof the court is of opinion that the complainant is entitled to the relief sought in his bill by having a partition of the tract of nine thousand acres of land in the bill and proceedings mentioned, but not to the prejudice of the purchasers of lots numbers seven, nine, ten, eleven, twelve, fourteen, fifteen and sixteen as designated on a plat and report made by A. W. Sexton and Minter Bailey, and filed in the papers of this cause, their rights having been secured to them under the decree rendered by the circuit court of

Lewis county heretofore. It is therefore adjudged, ordered, and decreed that Festus Young and Elias Bennett and Jacob Starcher, any two of whom may act, who are hereby appointed commissioners for the purpose, do go upon the land and ascertain the value thereof in a state of nature, and assign to the complainant one equal moiety thereof and to the devisees of Benjamin Dill or his vendees, the other moiety. But in making said assignment they shall charge to the moiety of Dill's devisees the lots numbers seven, nine, ten, eleven, twelve, fourteen, fifteen and sixteen, and if the remaining lots are of a value greater than numbers seven, nine, ten, eleven, twelve, fourteen, fifteen and sixteen, then they shall equalize the value thereof by assigning an equal moiety of the whole to complainant, and the residue they shall assign to the devisees of said Benjamin Dill, and all other questions are reserved, and return a fair plat and report of their proceedings in order to a final decree."

The commissioners named made the following report:

" Pursuant to an order of court held for Upshur county, West Virginia, May 17, 1865, we, Festus Young and Elias Bennett, commissioners, did on the 31st day of July, 1865, proceed to value the lots of land as designated in said order. In making the assignment we have assigned, agreeably to said order of court, the lots numbers seven, nine, ten, eleven, twelve, fourteen, fifteen and sixteen to the devisees of Benjamin Dill. In the accompanying plat, the last named lots are shown by red lines drawn within the (true) black lines."

ALLOTTMENT ASSIGNED TO THE DEVISEES OF BENJAMIN DILL.

| Lot No. | | acres | | | per acre | | | |
|---|---|---|---|---|---|---|---|---|
| " " 7, | 500 acres, | valued at | $5.50 per acre, | ............ ...... | $2,750 00 |
| " " 9, | 500 " | " | 4.50 " | ............ ...... | 2,250 00 |
| " " 10, | 500 " | " | 5.00 " | ............ ...... | 2,500 00 |
| " " 11, | 500 " | " | 3.50 " | ............ ...... | 1,750 00 |
| " " 12, | 500 " | " | 5.00 " | ............ ...... | 2,500 00 |
| " " 14, | 500 " | " | 2.75 " | ............ ...... | 1,375 00 |
| " " 15, | 500 " | " | 3.00 " | ............ ...... | 1,500 00 |
| " " 16, | 275 " | " | 3.50 " | ............ ...... | 962 50 |

Amount.............................. ...................................... $15,587 50

The remaining lots we have valued as follows, viz:

1879
Special Term.

Boggess
v.
Meredith *et al.*

| Lot No. | 1, | 500 acres, at $ | 90 cents per acre,..............$ 450 00 |
| " " | 2, | 500 " | 1 50 " . " ............... . 750 00 |
| " " | 3, | 500 " | 1 25 " " ............... 625 00 |
| " " | 4, | 500 " | 1 25 " " ............... 625 00 |
| " " | 5, | 500 " | 1 25 " " ............... 625 00 |
| " " | 6, | 500 " | 1 00 " " ............... 500 00 |
| " " | 8, | 500 " | 3 50 " " ...............1,375 00 |
| " " | 13, | 500 " | 3 00 " " ...............1,500 00 |
| " " | 17, | 275 " | 1 60 " " ............... 440 00 |
| " " | 18, | 275 " | 2 40 " " ..... ......... 660 00 |
| Side lot, | | 540 " | 3 08 " " ...............1,663 20 |

Amount, .......................................... $ 9,213 20

> "Respectfully submitted,
> "FESTUS YOUNG, *Commissioner*.
> "ELIAS BENNETT, *Commissioner*."

Thereupon the court on September 21, 1866, made this final decree :

"This cause came on to be finally heard upon the papers formerly read, with the report of the commissioners, Festus Young and Elias Bennett, appointed to make survey and partition of the land in the bill mentioned, and was argued by counsel. On consideration whereof it appearing to the court that Benjamin Dill, in his lifetime, and prior to the institution of this suit, sold those portions of the tract of nine thousand acres in the bill and proceedings mentioned, designated on the plat and report made out and returned by the commissioners under the order of this court at the May term, 1865, as lots numbers seven, nine, ten, eleven, twelve, fourteen, fifteen and sixteen, and which are now held and claimed by the defendants: It is adjudged, ordered and decreed that they do hold the said lots so specified according to their several and respective rights, as in the proceedings set forth, to them and their heirs forever, free and acquit from the claims of the complainant and his heirs forever, and that the complainant do have and hold those portions of said land designated on said plat as lots numbers one, two, three, four, five, six, eight, thirteen,

seventeen, eighteen and side lot, containing five hundred and forty acres, lying on the eastern boundary of said tract, between the lines of lots three, four, nine, ten, fifteen and sixteen, and the extreme eastern line of said survey, to him, his heirs and assigns, free and acquit of the claims of the defendants and their heirs forever. And it is further adjudged, ordered and decreed, that William C. Carper, who is hereby appointed a commissioner for the purpose, do by good and sufficient deed in fee simple, without warranty, for and on behalf of the complainant, release and assure to the defendants the said parcels of land hereinbefore alloted to them according to their several and respective rights and interest therein, as in the proceedings set forth, and by similar deed do convey and assure to the complainant, on behalf of the heirs and devisees of said Benjamin Dill, the parcels of land hereinbefore alloted to the complainant; said deed to be duly executed, acknowledged and stamped for recordation, for which services he shall be allowed the cost of stamps and a fee of $3.00 for each deed, to be paid by the party to whom the deed shall be executed. And it is further adjudged, ordered and decreed that the several defendants and each of them who have heretofore instituted actions of ejectment against the complainant and those claiming under him, be perpetually enjoined from any further proceedings at law upon said suits which have been made a part of this cause by consent of the parties. And it is further adjudged, ordered and decreed that the costs of this suit, in which shall be included the fees of the commissioner aforesaid, be borne in equal parts by the complainant and the defendants, and if either party fail to pay their proportion of such costs and the complainant is compelled to pay all the costs, leave is reserved to him to apply to this court for award of execution against such as may so fail to pay their just proportion thereof."

From this decree John S. Meredith, one of the devisees of Benjamin Dill, has appealed to this court.

*Davenport and Caldwell*, for appellant, cited the following authorities:

4 How. 297; 11 Pet. 51; 16 Pet. 25; 2 H. & M. 370; 4 Gratt. 441; 3 Gratt. 291; 1 Johns. Chy. 354; 1 Munf. 453; 1 Spence Eq. 520; 3 Lom. Dig. 5; 2 Lom. Dig. 177; *Id.* 332; 2 Munf. 363; 11 Leigh 136; 1 Story Eq. §§ 64 a., 529; 2 Story Eq. § 1520 n. 3; *Id.* § 1521 a.

*Caldwell & Caldwell*, for appellant, relied on the following authorities:

Am. L. Rep. July 1878, p. 478; 9 Gratt. 147; 2 Rob. 279; 14 Gratt. 82; 11 Gratt. 346.

*C. Boggess*, for appellees, cited the following authorities:

5 Wheat. 115; 7 Wheat. 59; 3 How. 689.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question for our consideration is: Are the parties claiming under Mary Jarrell entitled to any interest in any part of this tract of land of nine thousand acres? If not, the court below should have dismissed the bill. It is admitted that this land was patented to Jacob Baker, May 19, 1786, and conveyed by him October 21, 1788, to Jonathan Furbee; and on his death it descended to his two children, Nathaniel Furbee and Mary Furbee, afterwards Mary Jarrell, as his heirs, and that they continued joint-tenants of this land for upwards of ten years after their father's death in 1796. It is insisted by appellant's counsel, that under the facts and circumstances proven in this case the court ought to presume, that all the interest of Mary Jarrell in this land was conveyed by her to either her brother, Nathaniel Furbee, or his vendee, Benjamin Dill, or at least that the court should presume that Benjamin Dill actually ousted his tenant in common Mary Jarrell, at least as long ago as 1817; and that

if she ever had a right after his purchase of this land in 1808, it is barred by this actual ouster of her.

There was a very feeble effort made by the defendants to strengthen this supposed presumption by proof, that an actual conveyance was made by her to her brother about 1807 of her interest in this tract of land. But the evidence signally fails to render it in any degree probable that she ever made such a conveyance. It consists only of the evidence of a single witness, that the brother told him he had bought her interest, not that she had conveyed it to him; and there is no proof that she ever admitted she had made such a sale. On the contrary, if it can be believed, there is a good deal of testimony that not only he, but his vendee, Dill, and several of his agents have frequently admitted that no such purchase was ever made by her brother or by Dill, and that she continued to have an interest in said tract of land.

I have stated this evidence briefly. It is assailed by the counsel of the appellants as untrustworthy. I need not comment on it, as I consider that the deed from Nathaniel Furbee to Benjamin Dill shows on its face that no such conveyance could have been made. This deed, dated May 7, 1808, states that this land was patented to Jacob Baker May 19, 1786, and conveyed by Baker and wife, on October 21, 1788, to Jonathan Furbee; and it sets out in its preamble the boundaries of the land. After thus particularly tracing the title of the land from the commonwealth, and after stating that Jonathan Furbee died seized of this land, if his sister had really shortly before that time conveyed all her interest in this land to her brother, the grantor in the deed, is it credible that a deed drawn with this particularity would have failed to state that this tract of land on his father's death descended to him and his sister as his sole heirs, and that she by a deed, giving its date, as all the others had been given, conveyed her undivided moiety in this land to him?

But while the deed had been thus far exact and de-

tailed in tracing the grantor's title up to his father's

death, it is most singularly loose in showing the grantor's title as derived from his father. Having traced the title to his father this deed proceeds: " Whereas, after the execution of the before mentioned deed to him, Jonathan Furbee died leaving the aforesaid Nathaniel Furbee, his son, and the said Nathaniel Furbee and Elizabeth, his wife, having sold all their right and title in and to the aforementioned lands and premises to the aforesaid Benjamin Dill, and being about to convey and make over the same, therefore this indenture witnesseth." The grantors in this deed then proceed to grant to Benjamin Dill and his heirs "all their estate, right, title, interest, property, claim and demand of, in, to or out of the premises aforesaid, together with its appurtenances and all the estate, right, title, interest, property, claim and demand whatsoever of the said Nathaniel Furbee and Elizabeth, his wife, in law or equity, or otherwise whatsoever, to have and to hold the said tract and parcel of land, and premises, hereditaments and other appurtenances hereby granted or mentioned so to be to the said Benjamin Dill his heirs and assigns, to the only proper use of the said Benjamin Dill his heirs and assigns forever." And then follows a special warranty of " said tract or parcel of land, hereditaments and appurtenances hereby granted or mentioned so to be."

It will be observed that this deed, while it recites that the grantor was the son of Jonathan Furbee, deceased, does not say, as it could not with truth have said, that he was the only child, nor does it say he was his sole heir, as it could not have so said with truth. But though all the parties to this deed knew that the grantor was not the sole heir of his father, and though he is particular in the granting part of this deed to convey only his interest in this land, which the parties well knew was one undivided moiety, yet the deed is particular not to so describe his interest, but on the contrary it is so worded that a stranger to the facts might draw the inference that the

grantor was the sole heir of his father, and that by this deed a title to the whole tract of land was conveyed to Benjamin Dill.

The object of the parties in so wording this deed seems obvious enough. The lands lay in a distant state, where it would not be known that Jonathan Furbee left two children. The purchaser, Benjamin Dill, bought their interest in these wild lands with a view of dividing them up and selling them. He knew that parties, who bought for homes for themselves, would be unwilling to purchase an undivided interest in these lands; and the deed, while it really conveyed only an undivided moiety of the lands, was so written that strangers would suppose it conveyed the whole of the lands. Benjamin Dill accordingly personally and by his agents proceeded to sell parcels of this land in tracts of five hundred acres to sundry persons, both he and they leading such persons to believe that he was the sole owner of this tract of land; and deeds were accordingly made to them of the entire parcels of land bought. It is charitable to believe that he did not originally intend to thus sell and convey more than one moiety in value of this land, and to leave the other moiety for his tenant in common unsold, and accordingly he confined his sales for a long time within these limits; but after more than twenty years had elapsed, he seems to have concluded to appropriate the whole land to his own use, and in 1829 he made sales which far exceed in value one moiety of the land. About the same time he wrote his will devising the whole of these lands unsold to his children and grandchildren.

His co-tenant lived in Delaware, was a woman, and for the greater part of the time when these things were occurring was a married woman. The lands lay in a distant state and were wild lands of comparatively small value. Under these circumstances the having of the lands taxed to him alone, the payment of the taxes by him, the making of the deeds in the form he made them, not admitting on their face her title as co-tenant, the recording

of these deeds by the purchasers, the claim made by him in this distant State that he was the sole owner of the lands, are all, it seems to me, entitled to no weight as circumstances from which to presume she had made a conveyance to him of all her interest in these lands, or that he had made an actual ouster of her as his tenant in common. There is not the slightest probability that she ever had any knowledge, that in the far distant State of Virginia he and his agents had set up a pretence, that he was the sole owner of this tract of land, or that he was then acting in any manner in bad faith to her as his co-tenant. It is very probable that persons residing near his home in Delaware supposed he had purchased these wild lands of both of the heirs of Jonathan Furbee, and that he was the sole owner of the tract. But surely a notoriety of ownership of lands hundreds of miles away and existing among those, who had no means of knowledge, is a circumstance, from which it would be highly unreasonable to draw an inference, that his co-tenant knew he claimed the whole of this tract of land. Others may have thought so, simply because they knew and cared nothing about it, had supposed that Dill had done what most persons in his situation would have done, bought the land from both the heirs. She however knew better, knew he had not bought her interest in these lands; and I see no circumstance in this case which indicates that she had any suspicion, that he so said, or set up any other pretence of ownership of the whole land. There is not a particle of proof that she was ever informed that he set up such a pretence; and her mere failure to call him to an account of what he had done in Virginia with reference to these lands is, it seems to me, of very little weight, when we remember that they were wild lands of very little value. The estimate which was put upon them in Delaware is shown by the fact, that her brother sold his moiety of these nine thousand acres of land for $500.00 or at about eleven cents an acre. She was a married woman; her

1879
Special Term.

Boggess
v.
Meredith *et al.*

co-tenant an active business man. She might well suppose that she could safely leave the protection and preservation of their joint interest in these lands to his care; and, if she thought about the taxes on these lands at all, she could very properly wait till her co-tenant called upon her to aid in the payment of them.

It would shock the sense of right, which must be felt by all, if such a possession, as was held by Benjamin Dill of this tract of land, and such acts of ownership, as he exercised over it in a far distant State, should be held to raise a presumption, either that he had actually ousted his co-tenant from this tract of land so as to bar her claim, or that she had made a conveyance to him of all her interest in this tract of land. When the law raises such presumptions, it is under circumstances far different from what are disclosed in this case.

Justice Nelson, in delivering the opinion of the Supreme Court in *Zellers, lessee*, v. *Eckert et al.*, 4 How. 296, in speaking of the character of the proof necessary to establish an adversary possession, when there exists a privity between the parties, as in the case of tenants in common, says: "The distinction between this class of cases, and those in which no privity existed between the parties when the possession commenced, is in the degree of proof required to establish the adverse character of the possession. As that was originally taken and held in subserviency to the title of the real owner, a clear, positive and continued disclaimer and disavowal of the title, an assertion of an adverse right and to be brought home to the party, are indispensable, before any foundation could be laid for the operation of the statute. Otherwise the grossest injustice might be practiced. For without such notice he might well rely on the fiduciary relation, under which the possession was originally taken and held. The statute does not begin to operate until the possession, before consistent with the title of the real owner, becomes tortious and wrongful by disloyal acts of the tenant, which must be open, continued and

notorious, so as to preclude all doubt as to the character of the holding, or want of knowledge on the part of the owner."

The principle here laid down applies to every case where a party comes into possession of land while occupying a fiduciary relation to another, and includes, as has been often decided, the case of a tenant in common in possession of land. He occupies such a fiduciary relation to his co-tenant, that it is well settled that the law will never presume, that he has actually ousted his co-tenant, or that there has been a conveyance to him by such co-tenant, unless he disclaims the title which he holds with his co-tenant, asserts an adverse title, and brings home to his co-tenant distinct knowledge of such adverse title and disclaimer. Such knowledge must be clearly shown, and must in effect be the equivalent to a notice to him of such claim of adverse title. Many authorities might be cited to sustain this position ; but it is deemed unnecessary, as they have been laid down by this Court in a recent case and applied to the case of tenants in common. See *Hudson et al.* v. *Putney et al.*, 14 W. Va. 561.

It is obvious from these principles that the possession of Benjamin Dill cannot be regarded as adverse to his co-tenant, Mary Jarrell ; and that no presumption of actual ouster or of a conveyance from her can arise in this case. She certainly never had the equivalent of actual notice, that her co-tenant disclaimed their common title and set up an adversary claim ; and without this no length of time would convert his possession into a bar of her rights.

The plaintiff claiming under her had an interest then in this tract of land, and the court did not err in not dismissing his bill.

The next enquiry is : What are the rights in this land of the assignee of Mary Jarrell? The position of the appellant's counsel is, that when Dill, her co-tenant, sold and conveyed a defined portion of this land with-

4

out her consent or knowledge, the legal effect of such conveyance was to confer on the grantee in the deed the legal title to one undivided moiety of the lot conveyed, and that the legal title to the other moiety of the lot so conveyed became at once vested in Dill's co-tenant, Mrs. Jarrell; and if Dill had conveyed to a purchaser not the whole, but an undivided part of such defined portion of the land, the legal effect of such a conveyance would be precisely the same; that Mrs. Jarrell being thus a co-tenant with each purchaser in the lot conveyed to him by her co-tenant, Dill, either the purchaser or she had a right to demand a partition of such lot, and if through her *laches,* or by reason of the decree of the circuit court of Lewis county in 1845, in a suit in which neither Dill nor his devisees were parties, she has lost her right to a portion of these lots conveyed, she has no right by substitution to demand that what she has by her own fault lost shall be made up to her in the portion of the lots not sold. For to this portion of the land Dill, and after his death his heirs, had a legal title to an undivided moiety, and after his death his devisees are purchasers for a valuable consideration, and having the legal title to one undivided moiety of this unsold land, their legal title to this undivided moiety ought not to be made to yield to a shadowy equity in her, this right of substitution, when she permitted this equity to become stale.

These views, it seems to me, are all fundamentally wrong. Dill had a legal and equitable right as a tenant in common with Mrs. Jarrell to an undivided moiety of the entire tract of nine thousand acres. When he divided it into eighteen lots of say five hundred acres each, he obviously did not by this division of the land, made without the consent or knowledge of his co-tenant, become invested with the title to an undivided moiety in each of these lots separately, so that he could confer on a third person a title to an undivided moiety of any one lot to the prejudice of his co-tenant, and much less could he to the prejudice of his co-tenant confer a title to the

whole of any one of these lots. There are authorities
which hold a deed by one co-tenant conveying by metes
and bounds a part of the co-tenancy is void, and others
that hold it void so far as it undertakes to impair any of
the rights of the other co-tenant.  See *Cogswell* v. *Reed*,
12 Me. 200; *Duncan* v. *Sylvester*, 24 Me. 485; *Jeffers* v.
*Radcliff*, 10 N. H. 246; *Great Falls Co.* v. *Worster*. 15
N. H. 449; *Smith* v. *Benson*, 9 Vt. 140; *Phillips* v. *Tu-
dor*, 10 Gray 82; *Adam* v. *Briggs Iron Co.*, 7 Cush. 369;
*Gibbs* v. *Swift*, 12 Cush. 398; *Blossom* v. *Brightman*, 21
Pick. 284; *Peabody* v. *Minor*, 24 Pick. 333; *Porter* v.
*Hill*, 9 Mass. 35; *Bartlet* v. *Harlow*, 12 Mass. 348;
*Hinman* v. *Leavennerworth*, 2 Conn. 244a.; *Mitchell* v.
*Warner*, 4 Conn. 509; *Griswold* v. *Johnson*, 5 Conn. 365;
*Gates* v. *Treat*, 17 Conn. 392; *Marshall* v. *Trumbull*, 28
Conn. 185; *The Boston Franklinite Co.* v. *Condit*, 19 N.
J. Eq. 401; *Holcomb* v. *Coryell*, 3 Stock. 548; *Dorn* v.
*Dunham*, 24 Tex. 377; *Good v. Coombs*, 28 Tex. 51; *Car-
roll* v. *Norwood*, 1 Har. & J. 100; *Richardson* v. *Miller*,
48 Miss. 334; *Primm* v. *Walker*, 38 Mo. 98.

Some of these cases treating such a deed by one co-
tenant as absolutely void seem to me to have gone too
far.   Judge Allen, in delivering the opinion of the Court
of Appeals of Virginia, in *Robinett* v. *Preston*, 2 Rob.
278, speaking of such a deed says: "Though it might
be ineffectual to pass the particular tract as against the
co-tenant, yet as against the grantor and strangers it
would be effectual to pass the interest of the grantor in
the tract.   Possession under it would sustain a release
from the co-tenant; and if the part conveyed was assign-
ed to the alienee on partition, the title would be absolute
at law.   The deed being good against the grantor, the
entry under it of the tenant would be lawful; and though
it might be inoperative, so far as the rights of the co-
tenant would be thereby prejudiced, yet, as it would in-
vest the grantee with the estate of the grantor so far as
he could lawfully convey, the grantee would be tenant
in common with the co-tenant of his grantor to the ex-

tent of the interest conveyed.  His possession and seizin would be the possession and seizin of both, because such possession and seizin could not be adverse to the right of his companion, but in support of their common title."

These views of Judge Allen seem in the main to be supported by the cases of *Gates* v. *Salmon*, 35 Cal. 588 ; *Sutton* v. *San Francisco*, 36 Cal. 115; *Lessee of White* v. *Sayre*, 2 Ohio, (p. 112 of first Ed.) on p. 302 of said edition ; *Ebenezer Prentiss's Case*, 7 Ohio 473; *Treon* v. *Emerick*, 6 Ohio 391 ; *Dennison* v. *Foster*, 9 Ohio 126 ; *Resing* v. *Stannard*, 17 Mass. 285 ; *Barnhart* v. *Campbell*, 50 Mo. 598; *Dall* v. *Brown*, 5 Cush. 291; *Varnum* v. *Abbott*, 12 Mass. 480.  But it seems to me that the language used by Judge Allen, " that the grantee would be tenant in common with the co-tenant of his grantor, to the extent of the interest conveyed," must be given a qualified meaning, as it would seem he intended by what immediately follows and from the character of the case then before the court.  To suppose he meant that the grantee became a co-tenant in the particular tract laid off without his consent express or implied with the co-tenant of the grantor to all intents and purposes, so as to give such grantee an absolute right to sue for a partition of the parcel conveyed to him, would be a direct contradiction of what he had just said, that " the deed was ineffectual to pass the title as against the co-tenant, and would be inoperative, so far as the rights of the co-tenant were prejudiced."   In truth such a construction of Judge Allen's language would put him in opposition to all the authorities above quoted.

It is certainly law, that a conveyance by one co-tenant of a part of a tract specified by metes and bounds cannot give the grantee any greater right thereto than held by his grantor; and as he could not exclusively occupy the parcel of land he conveyed, so his grantee can have no such exclusive right; and as the grantor of such parcel could not demand that the whole or any part of

such parcel should be set off to him, so his grantee could 1879 Special Term.
acquire no such right. Yet the better authorities hold, Boggess v. Meredith *et al.*
that he has rights, which will be considered by the court
in making the partition of the whole tract, and which
will be respected, so far, and so far only, as they can be
without prejudice to the original co-tenant of the entire
tract. In making such partition, if the parcel so sold
and conveyed by one tenant in common can be assigned
to the purchaser as a part or the whole of the share of
his grantor without prejudice to the co-tenant of the
grantor in the entire tract, the court will so assign it,
thereby making the purchaser's title perfect. See *McKee*
v. *Barley*, 11 Grat. 346; *Campaw* v. *Godfrey*, 18 Mich.
38; *Holcomb* v. *Coryell*, 3 Stock. 548; *Dorn* v. *Dunham*,
24 Tex. 376; *Stark* v. *Barrett*, 15 Cal. 368; *H. Wor-
thington* v. *J. E. Staunton et al.*, *infra*, where many of the
authorities above cited are reviewed.

It is clear therefore that the sale of these lots by Dill
without the knowledge or consent of his co-tenant did
not put her in such a relation to the purchasers, that she
could be compelled to receive as a portion of her moiety
of the nine thousand acre tract the moiety of each of
these several tracts; and therefore she would not be
under any obligation to bring suits for partition against
each of these purchasers severally. Either Dill or she
had a right to a partition of the entire tract; and all
these purchasers from Dill ought in such suit for a par-
tition to have been brought before the court; and if the
court could with justice to Mrs. Jarrell have assigned to
the various purchasers from Dill the several parcels of land
they had purchased as a part of his share, it should have
been done in justice to Dill and the purchasers from
him. If a purchaser of a particular lot of Dill had at
the time of his purchase been made aware, that he was
but a co-tenant in the entire tract and had no legal title
to the whole or an individual moiety of the particular
lot he was selling, it is obvious that upon the principles
we have laid down such a purchaser could not convert

his possession into an adversary possession as against her except by a disclaimer, the assertion of some adverse title and notice to her; for his possession would have commenced in subordination to her title, which he knew was continuing and subsisting. See *Hudson et al.* v. *Putney et al.*, 14 W. Va. 561; *Clarke* v. *McClure*, 10 Gratt. 310. If however Dill made an absolute conveyance of a lot to a purchaser, and the purchaser had good reason to believe, and did believe, that Dill was the owner of the entire lot of land sold, then his possession would be adverse to Mrs. Jarrell. We need not in this particular case consider to which of these cases the particular sales made by Dill in this case belongs; for the circuit court of Lewis county in the decree rendered in 1845 decided in favor of these purchasers against Mrs. Jarrell's assignee; and the plaintiff in this suit acquiesces in this decision.

According to these views it was the duty of the devisees of Dill in this suit to ask of the circuit court to assign them the lots of land their ancestor, Dill, had sold, in order that they might make a good title for the whole of each of these lots to the purchasers thereof. This the court did and they have no right to complain of this action.

The equitable doctrine, that the courts will not enforce stale demands, has of course no application in this case, if the views above taken are correct. The plaintiff did not seek any account of rents and profits, but simply a partition of the land. It is of course immaterial how long a tenancy in common has lasted ; either party has a right at any time to ask a partition by the court.

It is claimed by the appellant's counsel, that as Nathaniel Furbee warranted the whole tract specially to Benjamin Dill in the deed to him, and as the record shows that Mrs. Mary Jarrell was the sole heir of Nathanial Furbee, she was barred to the extent of the lands which descended to her from Nathaniel Furbee

from recovering the land warranted by him, and therefore from having substituted for them the unsold lands. There is nothing in this position, for, as we have seen, Nathaniel Furbee did not sell or convey to Benjamin Dill the whole of this tract of land, but only a moiety thereof; and his special warranty can not be interpreted as extending beyond what he sold and conveyed.

Appellant's counsel also insist, that partition, should not have been made of this land, till the court had ascertained the expenses which Dill as co-tenant had incurred in the payment of taxes, in surveying and compensating agents, and until Dill's devisees had been compensated for the same and for the trouble he had been at in superintending this land. It is a sufficient answer to this to say, that they did not ask the circuit court for any such compensation, probably because they knew he had been more than compensated by having by his sales appropriated to his own use far more than one-half in value of this tract of land. The commissioners estimated that the land he had sold exceeded in value all the unsold land by $6,374.30, while the receipts for taxes paid by Dill, as shown by the record do not exceed $125.00; and for surveying they amounted to but $26.00.

The decree of the circuit court of September 21, 1866, must therefore be affirmed; and the appellee must recover of the appellant his costs expended in this court and $30.00 damages.

JUDGES JOHNSON AND MOORE CONCURRED.

DECREE AFFIRMED.