### SHEPARDSON vs. ROWLAND and others.

TENANTS IN COMMON: (1) *How their several interests descend to heirs.* (2, 3) *What each may demise.* (4, 5) *Liability of heirs to the co-tenant of their ancestor.*

1. Where one died intestate, owning an undivided half of a tract of land, and leaving four children and a widow, each of the four took title to an undivided eighth, subject to the widow's dower.
2. A tenant in common of land may demise or convey his undivided share.
3. But a demise by him of a specific portion of the land (as the "west half") is inoperative as against his co-tenant.
4. Where, upon such a demise as last mentioned, by the widow in this case as guardian of the children, she received rents and applied them to the use of herself and the children, the latter cannot be made jointly liable to the co-tenant for half of the moneys so received.
5. If the heirs are liable at all to such co-tenant, they are only liable separately, each for such part of the co-tenant's money as was expended for his own benefit.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiff and the father of defendants were tenants in common of a lot in the city of Milwaukee, each owning an undivided half. The father dying in 1854 intestate, the mother

was appointed the general guardian of the four defendants, then minors, and as such guardian, on the 1st of October, 1861, leased *the west half* of the lot to a tenant for three years at $84 per year, and on the 26th of May, 1864, gave another lease to the same tenant of *an undivided half* of the lot, for three years, at $100 per year—both leases being in writing. The tenant under them occupied the west half of the lot, owning the building thereon. The rents secured by these two leases were all received by the general guardian from the tenant, and were used by her in part for paying taxes and expenses on the undivided half belonging to the defendants, and the remainder for the support of herself and the defendants while they were minors.

The plaintiff did not in any way unite in or sanction either of the leases. He paid taxes upon his undivided half, and filled the *east half* at his own expense; but he never otherwise occupied or used it, or rented it to others. There was no building on the east half. The plaintiff, when asked upon cross-examination if he had a building on the lot, replied: "I didn't have any building on *my part*;" and again, when asked if the lot was fenced, replied: "Not *my lot*, I believe;" and in 1866 he abated a nuisance on the west half, for which he was paid by the guardian. The lot was never partitioned. The plaintiff brought this action against the defendants, not joining the guardian, to recover one-half of the rents received under these two leases. At the time the action was commenced, two of the defendants were still minors. The complaint avers that during the continuance of the tenancy in common between the plaintiff and the defendants, the premises were rented to different persons as tenants to the plaintiff and defendants, and large sums of money were paid by such tenants, as rents, to the defendants, and retained by them, and that the half of such rents of right belongs to the plaintiff; and judgment is demanded therefor. Two of the defendants answer in person, and the two minors by guardian *ad litem*—all setting up the same defenses.

The answer contains first a general denial, and then sets up certain facts as a defense to the plaintiff's claim. The evidence disclosed the facts as above set forth; and on motion of defendants, the court granted a *nonsuit*, mainly on the ground, as the bill of exceptions states, "that the evidence showed that the occupancy of the west half of the lot by the tenants of the guardian of the defendants was under an implied understanding between her and the plaintiff that she might occupy the west half, and the plaintiff the east half of the lot." From the judgment of nonsuit the plaintiff appealed.

*Carpenter & Murphey*, for appellant, contended that one co-tenant in common can recover of another his portion of whatever the latter may receive from a third person for the use and occupation of the premises. R. S., chap. 89, sec. 38; 1 Washb. R. P., 419, secs. 13, 14; *Miller v. Miller*, 7 Pick., 133; *Jones v. Harraden*, 9 Mass., 540; *Brigham v. Eveleth*, 9 Mass., 538; *Sargent v. Parsons*, 12 Mass., 149; *Shepard v. Rickard*, 2 Gray, 424; *Buck v. Spofford*, 31 Maine, 34; 18 Barb., 265. There is no testimony to support the position taken by the circuit court, that there was an implied understanding respecting the occupancy of the lot, or any parol agreement for its partition; and no such defense is set up in the answer. The leasing of the "west half" or an "undivided half" still leaves the defendants liable to the plaintiff for rent under the statute, because these tenants were seized *per my et per tout.* 4 Kent's Comm., 398. While one joint owner of land may release or alienate his interest, he cannot sever the possession by a lease, because his interest is not susceptible of occupation. A lease, therefore, of the "west half," or "an undivided half," was a demise of the co-tenant's interest; and the defendants are liable to him for his share of the rent received.

*Wilson Graham*, for respondents:

As to the demise of "an undivided half," plaintiff might as well claim a part of the purchase money of such a share belonging to the defendants, as to claim any portion of the

Shepardson vs. Rowland and others.

rents reserved by such lease. Plaintiff and defendants are tenants in common, and not joint tenants. A tenant in common is only seized *per my* and not *per tout*, but a joint tenant is seized *per my et per tout.* 2 Black. Comm., 182 ; 1 Cruise Dig., 835, § 26 (T. 18, c. 1, s. 26); 5 Bac. Abr., 240, 241, 274; 4 Kent's Comm., 368 ; *Harrison v. Barnby*, 5 Term, 246. It is quite probable that under such a lease, the lessee might have instituted proceedings for the partition of the lot. *Mussey v. Sanborn*, 15 Mass., 155 ; *Hunt v. Hazelton*, 5 N. H., 216. 2. The lease of " the west half " of the lot, although valid as against the general guardian of the defendants and her husband, was never valid as a lease as against the plaintiff. *Bartlett v. Harlow*, 12 Mass., 348 ; *Adams v. The Briggs Iron Co.*, 7 Cush., 361 ; *Marshall v. Trumbull*, 28 Conn., 183 ; *Whitton v. Whitton*, 38 N. H., 127 ; *Nichols v. Smith*, 22 Pick., 316. Such a lease being void as against the plaintiff, he cannot be entitled under or by virtue of the same to any part of the rents reserved thereby; and such lease not working an *ouster* as against him, he can only recover, if at all, under sec. 38, chap. 89, R. S. 1858; and he cannot recover under that statute, because the rents received were in no legal sense rents of the lot. The rents referred to in the statute are rents reserved by leases verbal or written *which are not invalid* as against any of the lessor's co-tenants. And the action, if maintainable at all, can only be maintained against the general guardian of the defendants; as all the rents received by her were received during the time all the defendants were infants. *Sherman v. Ballou*, 8 Cow., 304; *Dyer v. Wilbur, Guardian*, 48 Me., 287.

COLE, J. It seems to us very clear that the plaintiff had no cause of action against any one for the rents received on the lease dated May 26, 1864. By that lease the guardian of the infant heirs of John Rowland demised " the undivided half " of the lot. This undivided half descended to these heirs on the death of their father, subject to the dower of their mother;

that is, each took an undivided one-eighth. And we suppose the guardian could demise this interest for the heirs. A demise or conveyance of an undivided share of an estate by a tenant in common is valid, because each tenant is considered to be solely and severally seized of his share. 4 Kent, 368.

By the lease of October 1, 1861, the guardian undertook to lease a distinct portion of the lot, namely, the "west half" thereof. This lease was manifestly inoperative as against the plaintiff, for the reason that, there never having been a partition of the lot, one tenant in common could not demise a distinct portion by metes and bounds, as was attempted to be done by that lease.

The circuit court found that the occupancy of the west half of the lot by the tenants of the guardian was under an implied understanding between her and the plaintiff, that she might occupy the west half, and he the east half, of the lot. We are unable to say, upon the evidence, that there was any such "implied understanding" between the parties as the circuit court found. But still we cannot see upon what ground this joint action can be maintained, conceding that the plaintiff has a cause of action against some one for his just proportion of the rent received upon this lease. This is an action under the statute (section 38, chap. 89), for money had and received. It is brought against the four children of John Rowland. They did not receive this rent themselves, but it was received by their mother, who was their general guardian, and who testified that she used this money for the support of herself and children. The defendants, in fact, were all minors when this money was paid on the lease; and two of them were infants when this suit was instituted. Now the difficulty which presents itself to our minds against maintaining this action, is this : that there is no joint liability shown on the part of the defendants. It cannot be successfully claimed that a joint liability arises from community of title. These defendants are each separately seized of one-eighth part of the lot, it is true. But the money paid upon

the lease of 1861 was received by their mother — then their guardian,— and was applied to the support of herself and her children. Upon what principle of law can a joint action be maintained against these children? Is it because they have had the benefit of this money,— that it has been expended for their use? But does a joint liability arise from that fact? Suppose the money was applied in unequal portions to the support of the different children : shall a child who received little or nothing be liable to pay the entire amount due the plaintiff? It seems to us that in the most favorable view for the plaintiff, he must proceed separately against the heirs, and can only recover from each such portion of his money as they have respectively had the benefit of, and which has been expended for their use. Besides, it is by no means clear that the children are liable in any event for money which their guardian improperly received upon the lease, even if it was applied to their use. *Wilkinson v. Filby*, 24 Wis., 441. But upon the whole record we think the judgment of the court below was right, though for a somewhat different reason from that assigned by the circuit judge.

*By the Court.*— Judgment affirmed.