HARRY MEE ET AL. v. EDWIN E. BENEDICT ET AL.

*Tenants in common—Sale of interest in timber by cotenant—Partition—Deed—Execution—Recording laws—Evidence.*

1. The owners of the undivided twenty-three twenty-fourths of a tract of timbered land conveyed their interest in the timber to a stranger to the title, after which they joined with the owner of the remaining one twenty-fourth in a deed of the fee of the land, which deed contained no reservation of the timber, but the grantee had notice of its sale and conveyance. And it is held that it would have been competent for the equity court, under its general powers, to compel the grantors of the timber to institute proceedings for the partition of the land and timber as a whole, and that this right of the vendee cannot be defeated by the subsequent merger of the title; that partition should be had, and twenty-three twenty-fourths should be assigned to one parcel, and one twenty-fourth to another, and the grantee of the timber should be declared to be the owner of the timber upon the larger parcel, with the right to cut and remove it pursuant to the terms and conditions of his deed.

2. The insertion in a deed of standing timber of a license for its removal during a term of years, coupled with a provision that the timber not removed during said term shall belong to the grantor, will not prevent the title to the timber vesting in the grantee; citing *Monroe v. Bowen*, 26 Mich. 523; *Johnson v. Moore*, 28 Id. 3; *Wait v. Baldwin*, 60 Id. 622; *Williams v. Flood*, 63 Id. 487.

3. Where a deed of standing timber which describes the lands by section, township, and range only, though executed in another state, is certified so as to entitle it to record, and it is recorded in a county in this State in which the grantor holds the record title to lands answering in description to those described in the deed, the lands are sufficiently identified; citing *Russell v. Sweezey*, 22 Mich. 235; *Smith v. Brown*, 34 Id. 455; *Slater v. Breese*, 36 Id. 77.

4. The failure of the grantor in a deed of standing timber to affix a seal to his signature will not invalidate the instrument; citing How. Stat. § 7778; *McKinney v. Miller*, 19 Mich. 151; *Fowler v. Hyland*, 48 Id. 181; *Lockwood v. Bassett*, 49 Id. 549.

5. The practice of registers of deeds, which is believed to be uniform throughout the State, of providing a book, properly

indexed, in which to record the exceptional instruments offered for record, such as bills of sale of timber, land contracts, deeds of cemetery lots, leases of buildings, and various other kinds of papers, is a lawful and commendable one, and the record of such instruments, if entitled to be recorded, is constructive notice of the rights of the parties claiming under them.

6. The record of a deed of standing timber, entitled by law to be recorded, is *prima facie* evidence of the execution of the instrument, and of the sale of the timber; citing How. Stat. § 5685; *Bassett v. Hathaway*, 9 Mich. 31.

Appeal from Manistee. (Judkins, J.) Argued February 8, 1893. Decided December 22, 1893.

Bill to determine the rights of complainants in timber growing on certain lands. Complainants appeal. Decree reversed, and one entered in this Court for complainants. The facts are stated in the opinions, and in *Benedict v. Torrent*, 83 Mich. 181.

*P. W. Niskern* and *C. W. Sessions*, for complainants.

*E. E. Benedict*, for defendants.

MONTGOMERY, J. The bill in this case is filed to determine the rights of the complainants in and to the timber growing upon certain lands described in the bill. It appears that the lands were held by several tenants in common. The owners of twenty-three twenty-fourths of the land conveyed all their right, title, and interest in the timber to complainants. One Hart was the owner of the remaining one twenty-fourth which was not conveyed to complainants. Subsequently, those from whom complainants purchased and Hart also conveyed to the defendant Benedict; Benedict being the owner of the entire fee, subject to any rights that complainants have in the timber.

In the case of *Benedict v. Torrent*, reported in 83 Mich. 181, this Court considered the rights acquired by the respective parties. It was there held that the conveyance

by the owners of the twenty-three twenty-fourths of their rights in the timber did not confer a right upon Torrent and his codefendants to ask and have a partition of the timber; that a partition of the timber distinct from the lands could not be had. It was said:

"The only interest which such a purchaser takes is the interest in the timber upon such lands as in partition proceedings shall be set off to his grantor. Such partition must be made of the entirety of the estate, according to the shares held by each. When this is done, the purchaser of the timber would be entitled to all the rights secured by his conveyance. The cross-bill in this case is filed for the sole purpose of effecting a partition of the timber. It is not framed to obtain a partition of the entire estate."

The present bill is framed to meet the objection, and alleges, in substance, that the purchase of the interest by Benedict from the several owners, so as to invest Benedict with the title to the whole, was with a view to defeating a partition of the lands, by means of which the complainants' equity is to be worked out, and amounted to a fraud upon the rights of complainants. The transaction need not necessarily be so characterized. When the title rested in complainants' grantors, they having conveyed their interest in the timber upon the lands, the only means of making that conveyance effectual to carry out the intent of the parties was for said owners of the fee to ask and obtain partition of the lands. This they had the right, and it was their duty, to do, and equity would require and compel action on their part to that end. To deny this would be to permit the grantors of the timber to perpetrate a legal fraud upon their vendees. They have received a consideration for the timber, and have granted all the timber upon the lands to the complainants. This clearly includes all interest which they acquire on partition. See *Cunningham v. Pattee,* 99 Mass. 250; *Lessee of White v. Sayre,* 2 Ohio, 112; *Stark v. Barrett,* 15 Cal. 370; *Harlan v. Langham,* 69

Penn. St. 238; *Boggess v. Meredith,* 16 W. Va. 1; *Whitton v. Whitton,* 38 N. H. 133; *Barnhart v. Campbell,* 50 Mo. 599; Freem. Coten. §§ 199, 203, 207; and *Campau v. Godfrey,* 18 Mich. 27. In this last-mentioned case the question was raised, but not decided, as to whether the purchaser of a distinct parcel, less than the whole, from one cotenant, could sustain a bill for partition against the cotenant. The query was also suggested as to whether, if any of the cotenants ·should bring a bill for a partition, there would be any difficulty in making the purchaser a defendant. It was said:

" The necessity of making the purchaser a party, or even · of having two suits or two partitions in the same suit, instead of one, if the shares can still be fairly, set off to the cotenants, might seem to. be a consideration going only to the costs of the proceeding, rather than an objection upon which alone the deed could be held void."

The question in this case is, shall the grantor be permitted to retain the consideration, and say to the purchaser that, as he (the purchaser) cannot ask for partition of the timber distinct from a partition of the entire estate in common, therefore the title which thus he assumed to convey shall prove ineffectual? Are the rules of equity so unyielding as to sanction this monstrous injustice? We think not. We do not depart from the doctrine that such conveyance is void as against the cotenant, but it is void only in so far as it affects the cotenant's rights. He may give assent to the conveyance, and thereby make it effectual. It is void so far as that the cotenant's interests shall not be injuriously affected by the conveyance; but it is not void as. against the grantor, and we think it is competent, under the general equity powers of the court, to compel the grantor of a special interest to take such steps as to make his conveyance effectual. It is within his power to do so. He has received the consideration for the specific thing,.

to wit, the timber, to which his conveyance shall attach upon partition. He is in law and morals bound to take such steps as shall give effect to his conveyance. It would be a premium on fraud for a court of equity to admit its inability to compel the performance of this plain duty. The complainants having the right, it follows that it cannot be defeated by the fact that the entire title is now merged in Benedict.

It is true that some of the cases speak of a transfer purporting to convey, by metes and bounds, an estate less than the entire of that of the cotenant, as being void as against the cotenant, and this supposition of absolute invalidity has lead to results in some cases not altogether just. But it seems to me the more correct way to state the result of the authorities is that such a conveyance is good as between the parties to it, but that it is not to be permitted to affect injuriously the rights of the cotenants. This results in nothing more than that, on partition, the cotenant should be entitled to partition precisely as though no conveyance had been made. But it seems to me a manifest perversion of justice to say that, because the law declares that the cotenant may not have his rights injuriously affected by such a conveyance, he may profit by the fact that he is a cotenant, and that circumstance shall enable him to defeat the right vested in the grantees of his cotenant. Mr. Freeman, in his excellent work on Cotenancy, says:

"Although the deed does not impair the rights of the other cotenants, it by no means follows that they may treat it as void, or entirely disregard it. While falling short of what it professes to be, it nevertheless operates on the interest of the grantor by transferring it to the grantee. The latter acquires rights which the cotenants ought to be bound to respect. They ought not to be permitted to ignore his conveyance, and treat him as one having no interest in the property." Freem. Coten. § 199.

And so the courts in Ohio, West Virginia, California, Missouri, Pennsylvania, and New Hampshire have held that a grantee of a cotenant is a necessary party to proceedings in partition. See cases above cited. Mr. Freeman further sums up the result of these cases upon the effect of a conveyance, as follows:

" We are not sure that the difference in the decisions of many of the courts upon this subject has not been more in form of expression than in matters of substance. If, however, there remain any states wherein the courts really intend to assert that a conveyance by one cotenant of part of the common property is void in any other sense than that such conveyance will not operate to diminish or impair the rights of the non-assenting cotenants, such courts are falling into the minority, as the more recent decisions tend strongly and surely towards the recognition of such conveyance as a valid transfer of all the grantor's interest in the property therein described, entitling the grantee to certain rights that the cotenants of the grantor cannot wantonly disregard." Freem. Coten. § 204.

This conclusion is not only sustained by the cases hereinbefore referred to, but by the further cases of *Crook v. Vandevoort*, 13 Neb. 505; *Camoron v. Thurmond*, 56 Tex. 22; *Markoe v. Wakeman*, 107 Ill. 263; *Crocker v. Tiffany*, 9 R. I. 505; and *Worthington v. Staunton*, 16 W. Va. 208.

The precise question involved in this proceeding has perhaps never been directly passed upon in the same form of proceeding, but the principle which we apply has been fully asserted in at least two cases. In the case of *McKee v. Barley*, 11 Grat. 340, John T. McKee and Mary Bratton owned a tract of land, including a small triangular piece, which John T. McKee conveyed by metes and bounds to the defendant, Barley. Subsequently John T. McKee and Mary Bratton conveyed to Samuel W. McKee the entire tract, including that previously conveyed to Barley by John T. McKee. The court say:

"If, upon a partition, that part of the land described

in this deed, or affected by the water privileges, had been assigned to John T. McKee, he would have been in a condition to have executed his contract, if he would not, in that event, have been estopped by his deed from disturbing his vendee; and his son, claiming under his subsequent conveyance with full notice, can occupy no higher ground. A court of equity, in making partition, would have respected the rights acquired by a fair purchaser, provided no injury was done thereby to the coparcener. * * * As the conveyance of both the joint owners to the appellant, Samuel, has invested him with the legal title to the entire tract, he is now in a condition to perfect the title of the appellee, according to the terms of the contract, as evidenced by the deed from John T. McKee. This is all the decree requires him to do, and I think it should be affirmed."

The same doctrine is affirmed in *Crocker v. Tiffany*, 9 R. I. 512, where it is said:

"If one of two tenants in common should convey his interest in a distinct part of the estate to a third person, and should afterwards convey his interest in the remainder to his cotenant, both conveyances would be valid, for the cotenant could not affirm his own title under the second conveyance without impliedly recognizing the right of the grantor thus to convey the estate by distinct parcels." See, also, *Great Falls Co. v. Worster*, 15 N. H. 415.

We think that the conclusions which we have heretofore stated are clearly within the principles to be deduced from the prevailing authorities.

I concur with the Chief Justice upon the other points discussed by him.

A decree will be entered directing that the lands be partitioned. The partition will not be of the timber, as distinct from the lands, but of the lands and timber as a whole. Twenty-three twenty-fourths should be assigned to one parcel, and one twenty-fourth to another, and, upon such partition being made, the complainants will be declared to be the owners of the timber upon the larger parcel, and entitled to cut and remove it from the lands

within the time provided in their deeds of purchase. The complainants will recover costs of both courts.

McGRATH and LONG, JJ., concurred with MONT-GOMERY, J.

HOOKER, C. J. The complainants, with the exception of Harry Mee, claim the ownership of the undivided twenty-three twenty-fourths of the timber upon the land in controversy. The testimony shows that complainant Mee was made a party without his consent. Defendant Edwin E. Benedict claims the premises in fee-simple. Defendant Sarah B. Williams is Benedict's sister, and holds a mortgage upon the land, given by him. Defendants Hart, Sparrow, and Seymour have no present interest in the property. On April 29, 1887, the title to said land stood as follows: Hart, one twenty-fourth; Pease, twelve twenty-fourths; Mee and Seymour, eleven twenty-fourths. Upon that day, Pease conveyed to Mee, by instrument in writing, all of his interest in the timber upon the land. On May 4, 1887, Mee and Seymour conveyed all of their interest in said timber to complainants Torrent, McKillip, Haines, and Hopper, copartners, doing business under the name of Torrent, Haines & Co. They claim that this conveyance vested the title to twenty-three twenty-fourths of the timber in them. The defendants claim that at most it conveyed eleven twenty-fourths. On March 1, 1888, Pease deeded his remaining interest in the premises to complainant Mee in trust for Hart, and on March 22 Mee deeded all of his interest to Hart. On the same day, Seymour deeded her interest to Hart. No reservation of timber was made in any of these deeds. April 17, 1888, Hart deeded the land to Sparrow, and June 11, 1888, Sparrow deeded the same to Benedict, who held some tax titles upon the premises, which are admitted to have been invalid. By the first conveyance from Pease to Mee, the

latter acquired title to twelve twenty-fourths of the timber if the conveyance was valid, which, together with the interest he and Seymour had as owners of eleven twenty-fourths of the fee, gave them together the title to twenty-three twenty-fourths of the timber. The following is a copy of the record of that instrument:

"Copy from Miscellaneous Records of Manistee County, Liber 3, page 178, made May 4, 1887, at 11½ o'clock A. M.:

"*Know all men by these presents,* that I, Frank B. Pease, of the city of Chicago, in the county of Cook and state of Illinois, of the first part, for and in consideration of the sum of five hundred ($500) dollars, lawful money of the United States, to me in hand paid at or before the ensealing and delivery of these presents by Harry Mee, of Manistee, Michigan, party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, and delivered unto the said party of the second part all the goods, chattels, and property, to wit, all my interest in and to the timber on the premises described as follows, to wit: The S. W. qr. of the S. E. qr. of sec. 30, township 21 N., R. 14 west; also, the W. fractional half of the S. W. qr. and the S. W. qr. of the N. W. qr., sec. 31, township 21 N., R. 14 west; and the S. W. qr., sec. 30, and the N. W. fr. qr. of the N. W. qr., and the east half of N. W. qr., and the east half of S. W. qr., and the N. E. qr. of sec. 31, and the west half of the N. W. qr. of sec. 32, township 21 N., R. 14 W.; and the south half of the N. E. qr., and the N. E. qr. of the N. E. qr., and the N. E. qr. of the S. W. qr., of sec. 36, township 21 N., R. 15 W.; and lot 4, sec. one (1), and lot one (1), sec. 2, township 20 north, range 15 west,—and all the above-described land west of the principal meridian, and contains, in all, 1,034 38-100 acres, more or less; with license for the term of ten years to the said party of the second part, his heirs and assigns, to enter upon the said lands to cut and remove the said timber, and all such timber not so cut and removed during the said term shall belong to said party of the first part.

"It is also agreed that the said party of the second part shall pay all taxes on the land above described during the term above mentioned, or so much thereof as may be used in cutting and removing said timber.

"To have and to hold the said goods, chattels, and

property unto the said party of the second part, his heirs, executors, administrators, and assigns, and for his own proper use and behoof, forever.

"And the said party of the first part does vouch himself to be true and lawful owner of the said goods, chattels, and property, and have in himself full power, good right, and lawful authority to dispose of the said goods, chattels, and property in the manner as aforesaid; and I do, for myself, my heirs, executors, and administrators, covenant and agree to and with the said party of the second part, to warrant and defend the said goods, chattels, and property to the said party of the second part, his executors, administrators, and assigns, against the lawful claims and demands of all and every person or persons whomsoever.

"In witness whereof I have hereunto set my hand and seal the 29th of April, 1887.

"FRANK B. PEASE.

"Here follow, in usual form, the acknowledgment, Chicago, Ill., April 29, 1887; certificate of office of notary, Chicago, Ill., April 30, 1887."

This instrument is assailed upon several grounds, viz.:

1. The book called "Miscellaneous Records" is not a book of deeds or mortgages, and the record in that book was notice to no one.

2. The instrument does not show in what state the lands described are situated.

3. The instrument was a mere license to take off goods and chattels within 10 years from its date.

Standing timber is an interest in lands that may be acquired by deed (see *Johnson v. Moore*, 28 Mich. 3; *Wait v. Baldwin*, 60 Id. 622; *Williams v. Flood*, 63 Id. 487; *Monroe v. Bowen*, 26 Id. 523); and the fact that it must be removed within a definite period does not prevent the title to the timber vesting in the grantee (see cases above cited).

The land was described by the section, township, and range. Pease, the maker of the instrument, had title of record to these lands. Although the acknowledgment was taken in Chicago, the certificate of the official character of the notary was appended, and the paper placed on record in Manistee county, where the lands are situated.

This we think sufficient evidence to identify the lands sought to be described. *Russell v. Sweezey*, 22 Mich. 235; *Smith v. Brown*, 34 Id. 455; *Slater v. Breese*, 36 Id. 77.

The failure of Pease to affix a seal to the writing did not render it invalid, for, if the seal should have been affixed, the statute (How. Stat. § 7778) provides that its absence shall not invalidate the instrument. *Fowler v. Hyland*, 48 Mich. 181; *Lockwood v. Bassett*, 49 Id. 549; *McKinney v. Miller*, 19 Id. 151.

The instrument was duly acknowledged, thereby becoming entitled to record. How. Stat. §§ 5673, 5709, 5712. The record shows that this instrument was recorded in a book devoted to the exceptional instruments offered for record, such as bills of sale of timber, land contracts, deeds of cemetery lots, leases of buildings, and various other kinds of papers. There is nothing to show that this record was not properly indexed, and the register might properly provide a book for miscellaneous documents. Such is believed to be the uniform practice throughout the State, and we think it a lawful and commendable one. The record of this writing was constructive notice to the world of the rights of Mee under it. How. Stat. § 5712.

There is no merit in the point that the original writing was necessary to prove the sale of this timber. The record could be used for the purpose, and was *prima facie* evidence of the execution of the instrument. How. Stat. § 5685; *Bassett v. Hathaway*, 9 Mich. 31.

This covers all of the questions that arise upon the introduction of the instrument (similar in character) by which Mee and Seymour attempted to convey their interest in the timber to Torrent, Haines & Co.

It remains to discuss the effect of these writings, and the rights of the several parties under them. At the time that they were made, Hart was a tenant in common of the lands, and it is asserted that they were void as to him.

It is a doctrine of long standing that one tenant in common cannot convey a distinct parcel of the common tract so as to bind his cotenant. *Smith v. Benson,* 9 Vt. 141; *Duncan v. Sylvester,* 24 Me. 482; *Great Falls Co. v. Worster,* 15 N. H. 412, 449; *Bartlet v. Harlow,* 12 Mass. 348; *Peabody v. Minot,* 24 Pick. 329; *Johnson v. Stevens,* 7 Cush. 431; *Mitchell v. Hazen,* 4 Conn. 495; *Griswold v. Johnson,* 5 Id. 363; *Ore Co. v. Miller,* 41 Id. 112; *Cogswell v. Reed,* 3 Fairf. (Me.) 198; *Scott v. State,* 1 Sneed, 629; *Markoe v. Wakeman,* 107 Ill. 263; *Worthington v. Staunton,* 16 W. Va. 208; *Shepardson v. Rowland,* 28 Wis. 108; *Jewett v. Stockton,* 3 Yerg. 492. Cases might be multiplied upon this point, but these will suffice. Some hold the deed absolutely void, but the greater number treat it as valid between the parties, and hold that, if a partition should be made by which the parcel conveyed should be allotted to the grantor, it would inure to the benefit of the grantee by estoppel. Some courts have evolved the doctrine that the conveyance is binding to some extent upon the cotenant; holding that it is binding so far as it does not injure, and that the courts may give relief to the grantee, taking care not to deprive the cotenant of any rights. Others have gone to the extent of holding that such conveyance is valid as against the cotenant, and, as in *Prentiss' Case,* 7 Ohio, pt. 2, p. 129, that he can be compelled to partition with each of several grantees of different parcels of the tract. It may be mentioned that the case of *Lessee of White v. Sayre,* 2 Ohio, 112, upon which this decision is based, was by a divided court. In Missouri the court has gone so far as to hold that the deed is valid against the cotenant, and that the grantee may have relief, because the statute authorizing a sale furnishes a means of giving adequate relief to the cotenant in all cases.[1] The various phases of this question may be seen by consulting the following cases:

---

[1] See *Barnhart v. Campbell,* 50 Mo. 597.

*Stark v. Barrett*, 15 Cal. 370; *Gates v. Salmon*, 35 Id. 588; *Sutter v. San Francisco*, 36 Id. 115; *Crook v. Vandevoort*, 13 Neb. 505; *Camoron v. Thurmond*, 56 Tex. 22; *Arnold v. Cauble*, 49 Id. 533; *Boggess v. Meredith*, 16 W. Va. 27.

Some of my brethren think that a court of equity may properly grant relief to the grantee in all such cases by requiring the tenants in common to partition the land, but I cannot assent to that doctrine. In the case of the conveyance of a single parcel, no hardship might result from such a course; but if several parcels should be carved out and sold to different purchasers, as, in one case, where one tenant in common platted and sold village lots from a part of the tract, or where different interests, such as minerals, stone, sand, clay, and the like, are granted, it would be more difficult to preserve the rights of the cotenant. I think the great weight of authority is against it.

But while the conveyance of a portion by one tenant in common may be disregarded by his cotenant, if such cotenant, or any other person, shall, with notice of the grantee's interest, choose to unite the different titles by purchasing the remaining interest of the grantor, he may be held to assent thereby to such conveyance by recognizing the right of the grantor to deed in parcels, and he will take the title of the grantor subject to the rights of the prior grantee, which equity may compel him to recognize and satisfy. While a tenant in common may insist upon his own, he will not be permitted, in such a case, to collude with his cotenant, or profit by his fraud. *Ore Co. v. Miller*, 41 Conn. 112; *Goodwin v. Keney*, 49 Id. 563; *Adams v. Manning*, 51 Id. 5; *Crocker v. Tiffany*, 9 R. I. 512; *Great Falls Co. v. Worster*, 15 N. H. 413. Hart saw fit to unite in himself the titles of all his cotenants. He could only buy what they had left to sell, and, as he took these interests with notice of the sale of the timber, he

cannot justly claim such timber. By his act he has put it out of the power of the complainants' grantors to deliver this timber, but he cannot be said to have acquired the title to it. He has chosen to recognize the sale to the complainants by purchasing the remaining interest. His grantees are in no better position.

There are many allegations in the bill which are unnecessary in the view that I take of the case, but sufficient appears to justify a decree that complainants recover the timber upon twenty-three twenty-fourths of the land, and that partition of the premises be made to determine the same. Complainants Torrent, Haines & Co. should recover their costs against defendants Benedict and Williams. As to the other defendants, the decree of the circuit court dismissing the bill should be affirmed.

GRANT, J. *(dissenting)*. I cannot concur in the opinions of my brethren in this case. In my judgment, the logical conclusion of the former decision is that complainants are without remedy as against these defendants. The bill was not then framed to test the question now involved, and we therefore refrained from expressing any opinion upon it. The like course was pursued in *Adam v. Iron Co.*, 7 Cush. 361. In that case one Lane, the owner of the fee-simple of three undivided fourths of the lot in question, in December, 1790, sold and conveyed the same to three grantees, reserving to himself all the iron and other ores in and upon the land, with the right of way to pass and repass, and to dig for and cart away the same from the land. He occupied the premises and took ore therefrom till the year 1800. He then sold his reserved and excepted rights to one Forbes, who used the orebed during his lifetime. The complainants were the heirs of Forbes. The grantees in the deed from Lane, of December 21, 1790, conveyed

to the defendant company, which took possession of the land, and dug and carried away the ore, driving the complainants therefrom. The bill prayed for an accounting, injunction, and general relief. A demurrer to the bill was interposed, which was sustained. It was urged upon the argument that the bill showed a tenancy in common of the mine, and therefore the court had jurisdiction. The court held that no such case was set out in the bill, and declined to take jurisdiction on that ground. The bill was afterwards amended, averring that the complainants were tenants in common of three quarter parts of the ore and orebeds, and that the defendant was tenant in common of one quarter part. The learned Chief Justice Shaw delivered the opinion of the court. It was there said:

"It is entirely settled, as a rule of law in relation to land, that the conveyance of any separate estate by a tenant in common, by metes and bounds, is void as against the cotenants, and is available only by way of estoppel against the grantor and his heirs.   *   *   *   I have a moiety. My cotenant has a moiety. He may convey a quarter of the whole estate to one, an eighth to another, a sixteenth to another, and so on indefinitely, letting in other cotenants with me; but, all being seised of aliquot parts in the same estate, and of like kind and quality, my right to partition is not disturbed by the number of cotenants; but, if he could convey his aliquot part in specified parcels of the estate, he might diminish the value of my right, if not render it worthless."

The opinion then states the mischief and inconvenience arising from the act of one cotenant in attempting to convey his undivided part in particular parcels, instead of an aliquot part in the whole common estate, and states that for the same reasons an attempt to "parcel out rights, in their nature indivisible, in definite portions of the inheritance, as the mines to one, and the general estate to another," is void against cotenants. The conclusion reached was that the reservation in the deed from Lane was void, and

the subsequent deed to Forbes was also void, and that no interest in the estate or orebeds passed by it.

For the like reason, a conveyance by a cotenant of his interest in the timber, ore, minerals, clay beds, and the like, would be void.

To the same effect is *Franklinite Co. v. Condit*, 19 N. J. Eq. 394, which was cited in the former case, and where it was held that a grantee of the right to dig ores, from one tenant in common, cannot call for a partition of the premises.

These are the only cases I have been able to find, and we are cited to no others, which involve the sale by one tenant in common of an interest in the common estate which in its nature is indivisible.

The cases of *Lessee of White v. Sayre*, 2 Ohio, 112; *Stark v. Barrett*, 15 Cal. 370; *Harlan v. Langham*, 69 Penn. St. 238; *Whitton v. Whitton*, 38 N. H. 133; and *Barnhart v. Campbell*, 50 Mo. 599,—are cited as analogous in principle to the present case, and therefore sustaining the claim of the complainants. None of these cases involve the conveyance by a tenant in common of any interest in the timber, or ores, or minerals, or other interest in the land. They involve only the effect of a conveyance of an undivided interest of a part of the common estate, or a conveyance in severalty, by metes and bounds, of a part thereof. All these authorities hold that such conveyances do not affect the rights of the other cotenants. None of them, except *Lessee of White v. Sayre*, hold that the grantees of such parties can maintain partition against their grantors' cotenants. The extent of the holding is that when partition is had of the entirety, and a specific part is partitioned to their grantors, they are then estopped by their deeds from denying the rights of their grantees. The purchaser of a specific parcel may get nothing, for none of the land conveyed to him may be set apart to his grantor. In such

case he is without remedy, unless it be an action at law to recover the purchase price for failure of consideration under the covenants in his deed. With these decisions I find no fault. They may safely be granted to rest upon sound principle, and still they do not, in my judgment, affect the question now under consideration, where an aliquot part of the common estate is not conveyed. The same will, in my judgment, be found true of the other cases cited by my brethren.

It is also held, with good reason, that where the cotenants have assented, by deed or in some other proper manner, to the act of the cotenant, they thereby ratify the act. But mere absence of objection is not sufficient. *Ore Co. v. Miller*, 41 Conn. 132; *Goodwin v. Keney*, 49 Id. 563. In the former case, decided in 1874, the court say:

"In New Hampshire, as in Massachusetts, the doctrine that such conveyances may be made valid and effectual by the act of the cotenants is well established. *Great Falls Co. v. Worster*, 15 N. H. 412; *Whitton v. Whitton*, 38 Id. 127. In view of the authorities in this state and elsewhere, we think the true doctrine to be that a deed by one tenant in common of a part of the common property, by metes and bounds, is inoperative as against the other tenants; but if the cotenants, then or subsequently, by a suitable conveyance confirm the grant, the grantee still holding under his deed, it becomes, in effect, operative and binding upon all concerned."

I am unable to concur in the view that a cotenant, taking a deed without any reservation, thereby assents to the transfer of such an interest as is here conveyed.

The rule must be the same in the case of an undivided interest of a stone quarry, a coal mine, minerals and ores of all descriptions, or any valuable deposit which may exist beneath the surface, as in the case of timber. The grant of mines gives the right to work them, unless there is some positive restraint in the language of the grant itself. Bainb. Mines, 31. Now, complainants' vendors had the

right to sell the land, and any person, including their cotenants, had the right to buy. The deeds contained no reservation, but purported to convey the entire fee of the land. Their grantors did not agree that they would not sell, or that they would obtain partition for the benefit of their grantees. There are now no cotenants entitled to partition, unless complainants, by their purchase of the timber, are such cotenants; but it was decided in the former suit that they are not. It is, I think, a sufficient reply that the statute makes no provision for partition in such cases, and this Court cannot, therefore, assume jurisdiction. Under the clear weight of authority, complainants did not, by their purchase, become tenants in common with the other cotenants, and cannot, therefore, invoke the benefit of the partition statute, which is applicable only to joint tenants and tenants in common. How. Stat. § 7850. But, aside from this, the rights of the cotenants and subsequent purchasers from them may be seriously affected if one cotenant may lawfully sell an undivided interest in any valuable thing that may exist on the land. It is true, in the present case, that their possession would be only temporarily interfered with, for the timber can be speedily removed; but the purchase of a similar interest in a mine or other like property would entitle the purchaser to the like possession to explore, to erect plants, to remove his ore, and he would thus become entitled to the permanent possession of the land, or so much thereof as was necessary for his purpose. Would not this affect adversely the rights of the cotenants? May a cotenant convey his interest in the coal to one, in the iron to another, in the clay to another, in the stone to another, and so on, and, because their grantor refuses to take steps to secure a partition, or has sold his remaining interest in the land to his cotenants, may they institute partition suits in the name of their

grantor, and have the land partitioned, so that each may have possession to work his mines, quarries, or clay beds?

Another difficulty presents itself. If partition of land cannot be made without great prejudice to the owners, it must be sold, and the proceeds divided among the cotenants. Very often, if not generally, mining lands cannot be partitioned without great prejudice, and must therefore be sold. Upon such sale, how could the value of an undeveloped mine or other deposit be separated from the value of the land in other respects, so as to give to the purchaser of an undivided part thereof his proportionate share? Yet by this rule such purchaser would have the right to have the land sold, in order that he might receive the supposed value of what he purchased.

I do not think that such a rule is founded upon reason or authority. Principles must not be determined by the hardships of an individual case. A principle established to relieve from hardship in one case may lead to greater hardships in another. An important principle is here involved, which must be considered and determined regardless of what the complainants may suffer. It is no answer to the principle to say that the action of complainants' grantors in conveying an interest to them, and the rest of the estate to other parties, is a fraud, intentional or constructive. If it was a fraud in fact, complainants have a remedy at law. But there is no question of fraud involved. Complainants purchased with full knowledge of the facts; so did the defendants and their grantors. The title was of record when complainants purchased the timber, and they are chargeable with knowledge that their grantors held only undivided interests in the land as tenants in common. Defendants also purchased with full knowledge of the facts. The sole question is therefore one of law.

The decree should be affirmed.