MARIE V. GEX *v.* WILLIAM A. DILL ET AL.

1. LEASE.   *Description of land.   Failure to give county or state.   Who
cannot object.*

> Where an administrator's deed to lands was made, pursuant to the
> record by which it was authorized, subject to a designated lease,
> recited to have been executed by the decedent, the parties
> holding thereunder cannot avoid the lease because it does not
> in its body designate the county and state in which the lands are
> located, especially where the county and state are named as a
> caption to the lease and it was acknowledged before an officer
> of the county so named and recorded in the records thereof.

2. SAME.   *Creation of perpetuity.*

> Where a turpentine lease omitted to give the date when the rights
> it granted should begin and end, but work was commenced there-
> under within two years, a contention that the lease was void, as
> tending to create a perpetuity, was untenable.

3. SAME.   *Construction.*

> Where a turpentine lease was for value, a part of which was paid
> in cash and the balance paid to the administratrix of the lessor
> after his death, and conveyed the timber and a right of way on
> the premises for the purpose of exercising the privilege of box-
> ing, and the lessees were put in possession, a contention that
> the lease was a mere license, which was revoked by the death
> of the lessor, was untenable.

FROM the chancery court of Hancock county.

HON. STONE DEAVOURS, Chancellor.

Mrs. Gex, the appellant, was complainant in the court below;
Dill and others, appellees, were defendants there.   From a de-
cree in defendants' favor, the complainant appealed to the su-
preme court.   The facts are stated in the opinion of the court.

*Harper & Harper,* for appellant.

So far as concerns description, the case is wholly within the
decisions of *Raines* v. *Baird,* 84 Miss., 807; *Kyle* v. *Rhodes,* 71
Miss., 491.

The instrument is nothing more nor less than a mere license, an executory license; an authority to the grantees and their as- signs to enter upon the lands described in said license at their pleasure; to extract turpentine and scrape rosin from the pine trees on said lands; and that their term was to be three years— no more, no less—from the time they began to box the trees on the different parts of this land for the purpose of extracting the sap for turpentine. This license was not only executory, but it was not coupled with an interest. No money was to be paid till after the boxing was commenced and the term of three years begun; so it will be readily seen that the license was revokable at the pleasure of the grantor, Roderick Seal, or at the will of the grantees or their assigns, and would or could be terminated by the death of either party, provided such death occurred be- fore the license had been executed, either in part or whole, as no value had been paid to the grantor under the terms of the license. There was no power in any court, chancery or other, to enforce on the part of the grantor under the terms of the grant a compliance by the grantees with the terms of the license, as it was what is technically termed a unilateral contract.

Roderick Seal, the grantor, departed this life in September, A.D. 1899, and such death terminated the license, for the reason that there had been up to this date no execution of the terms, no investment of money in the business, and no vested interest established. The appellant was informed that the grantees had of their own accord advanced a very small sum, amount not known, but believed to be about three hundred and fifty dollars, which had been accepted by Mr. Seal as a volun- tary advancement, and the appellant tendered this amount with the bill, not as a legal right or duty, but as a matter of con- science and equity to the appellees.

We call attention of the court to the following cases: *Prince v. Cas,* and *Renck* v. *Kern,* reported in vol. 2 Am. L. Cas., p. 687, in which this question is thoroughly discussed.

This instrument, no matter about the forms of expression, is

in fact and in substance a mere license, and in no sense a lease
for a term of years, as will be seen by an examination of the au-
thorities.   The time of beginning and a certain time of termi-
nating are essential to a good lease for a term of years.  *Manu-
facturing Co.* v. *Hobbs,* 83 Am. St. Rep., 661; *Western Trans-
portation Co.* v. *Lansing,* 49 N. Y., 508; *Abell* v. *Radcliff,* 7
Am. Dec., 377; Preston on Conveyances, 159; Martindale on
Conveyances, 271, sec. 322.

*W. J. Gex,* on the same side.                    -

If the failure to designate the county and state in the lease
was a patent ambiguity, the lease was void, for reasons well
established in law, and plaintiff's petition should have been sus-
tained and the relief she prayed for granted.   *Bowers* v. *An-
drews,* 52 Miss., 596; *Haughton* v. *Startor,* 71 Miss., 357.

If the failure to designate the county and state in the lease
was a latent ambiguity, then, because defendant introduced no
evidence to explain said ambiguity, and objection to the intro-
duction of the lease at the trial was made, the petition of the
plaintiff should have been sustained and the relief prayed for
granted.   *Hanna* v. *Renfro,* 32 Miss., 125.

The written instrument purporting to be a lease was, in fact,
not a lease, because it lacked the essential. element of a lease—
to wit, that it should have a certain duration, a certain begin-
ning and ending.   Greenleaf's Cruise on Real Property, vol. 4,
p. 8; Taylor's Landlord and Tenant, vol. 1, par. 70, p. 93, and
same work, sec. 75.

The identical question was fully considered and properly
passed upon in the case of *Manufacturing Company* v. *Hobbs,*
128 N. C., 46 (38 S. E., 26; 83 Am. St. Rep., 661), to which
decision we would most particularly call this court's attention,
as it is a case on all fours with the one at bar.

Appellees would have this court to interpret the contract or
pretended lease to mean that they should have a·reasonable
time in which to begin gathering and removing the turpentine

from the trees on the lands; but to do that this court would have to make a new contract for the parties, there being no ambiguity in the terms of the pretended contract from which to reach that conclusion. On this question the court's attention is invited to the case of *Abell* v. *Radcliff,* 7 Am. Dec., 377 (13 John., 297).

*Green & Green,* and *Ford & White,* for appellees.

Let counsel explain what passed under the grant in these words: "This indenture . . . witnesseth: That the said party of the first part . . . has granted, bargained, leased, and conveyed, and does by these presents grant, bargain, lease, and convey, unto the said party of the second part, their heirs and assigns, at the rate of six dollars per one thousand boxes, all of the timber upon the following described tract of land, for the purpose of boxing, working, and using said timber for turpentine purposes" (describing the same according to the land numbers), "to have and to hold, box, work, and use said timber for turpentine purposes, unto the said party of the second part, their heirs and assigns." These are the words of grant; by them something passed from the one party to the other, and it was an interest in the land sufficient to support this defense that is here made. *Fox* v. *Lumber Co.,* 80 Miss., 6.

Appellant's counsel entirely overlooked the fundamental rule of law that no man can derogate from his own grant, and the further elementary principle that when a grant is made by the owner of the whole estate, everything that is essential to the enjoyment of that part granted passes under it as an incident. *Carson* v. *Lumber Co.,* 69 S. W. (Tenn., 1902), 321; *White* v. *Foster,* 102 Mass., 379; *Mathews* v. *Mulvey,* 38 Minn., 344; *Boults* v. *Mitchell,* 15 Pa., 379; *Wheeler* v. *Carpenter,* 107 Pa., 271; *Heflin* v. *Brigham,* 56 Ala., 566; *Howe* v. *Batchelder,* 49 N. H., 208; *Gilmore* v. *Wilbon,* 12 Pick., 120; *Weit* v. *Baldwin,* 60 Mich., 626; *Wood* v. *Ledbetter,* 13 Mees. & W., 844;

*Thomas* v. *Lovel,* Vaughn, 330, 331; *Huritt* v. *Isham,* 7 Exch., 75; *Pierrpont* v. *Narnard,* 6 N. Y., 279.

The learned counsel says correctly that the lease must have a certain beginning and a certain ending. That is certainly correct. But under the instrument in the instant case the interest in the lands for the purpose of working, boxing, and using them vested upon the execution of the lease. The operative words therein are *in praesenti,* and not *in futuro.* It recites that the party of the first part "has granted, bargained, leased, and conveyed, and does by these presents grant, bargain, and convey unto the said party of the second part, their heirs and assigns, all of the timber upon the following described tract of land for the purpose of boxing, working, and using said timber for turpentine purposes, . . . to have and to hold, box, and use said timber for turpentine purposes, unto the party of the second part, their heirs and assigns."

The estate passed upon the execution of the deed, and it passed a present interest and estate in the land because the grantees did not contemplate cutting the trees from the soil, converting them into personalty, but the intention was that they should be used as such, as growing trees they could not be made available for turpentine in any other manner, and under the decisions an interest in the realty passed whereby the grantee was entitled to have the trees remain upon the soil and draw sustenance from it. Let the court distinguish the case of a sale of the trees as such, as part of the realty, from the sale of the trees with the intention of immediate severance. It is to be noted that the commencement of the lease was certain—*i. e.,* that not the time of the making of the deed, but the time of the termination of the term of enjoyment, was to be made certain by the happening of an event—*i. e.,* three years after the party of the second part should desire to commence to work the trees for turpentine purposes. The lease in its verbiage is similar to the one construed in *Mathews* v. *Mulvey,* 38 Minn., 344, wherein the termination of the right to take the timber was made to depend

upon a condition precisely similar to that in the case at bar, and it was there construed as a condition subsequent and as defeating an estate that has vested under the words in the granting clause, and it was further held, under the universal rule, that being a condition subsequent, it must be strictly construed to prevent forfeiture.

The true interpretation of the instrument in the instant case is that an estate in the realty vested by the granting and the *habendum* clause of the deed *in praesenti* for the purposes therein specified, and the end of the lease was to be ascertained by the happening of a certain condition—*i. e.,* the expression of the desire of the appellees to remove the turpentine, and their beginning so to do—and after this the estate was to terminate at the end of three years. The estate vested was in realty itself and passed under the grant.

This was in 1899–1900, before the appellant acquired any title whatever, and at that period the owner under whom this appellant claims the money was paid by the appellees for the lease; and were the same void in its inception, still, as the heirs of the decedent accepted the sum after the death of the lessor, and received the payment in accordance with the terms of the lease without protest, there would arise an estoppel upon them to claim *in antagonis* to the lease that had been thus ratified, confirmed, and renewed by the reception of benefits under its terms at this time when, according to the contention of the appellant, it has been revoked. Concede that the same was revoked by the death of Seal, the heirs of Seal were the grantors in the chain of title, and if they had desired to claim that the lease was revoked and void, it was their duty to have acted promptly, and not to have taken the benefit that they did, and which they should take from the parties, appellees only, if the lease was valid, and not otherwise; and so, receiving the benefits of the lease after the death of Seal voluntarily, this lease would operate by estoppel, and it being expressly recited that they were to take subject to the lease, they

are bound thereby, even though it were revoked by the death of Seal. 2 Minor's Ins. (14th ed.), 767; *Young* v. *Walker,* 70 Miss. (1893), 819; *Handy* v. *Noonan,* 51 Miss., 169; *Lee* v. *Gardiner,* 26 Miss., 512; *Kemp* v. *Pintard,* 32 Miss., 324; *Wilie* v. *Brooks,* 45 Miss., 542.

. .Argued orally by *A. Y. Harper,* and *W. J. Gex,* for appellant, and by *Garner W. Green,* for appellees.

CALHOON, J., delivered the opinion of the court.

The main purpose of the bill of Mrs. Gex, the appellant, is to remove as a cloud on her title a lease from Roderick Seal to the Enterprise Turpentine & Rosin Company. She claims the fee of the land by successive conveyances under Seal's title, and the appellees claim turpentine rights under assignment of the lease of Seal to that turpentine and rosin company. She deraigns title to the lands from the government into Seal, avers the death of Seal, a chancery decree authorizing a sale of the lands of Seal, a sale and conveyance under it to J. I. Ford, a conveyance by Ford to Horace Marble and from Marble to her. She makes this conveyance of the lands by Marble to her an exhibit to her bill, and it shows that it was made "including whatever right I might have, under that instrument of writing purporting to be a turpentine lease, whether void or valid, now claimed by W. A. Dill & Co., on a part of the lands hereinafter described, which lease was originally made or attempted to be made by Roderick Seal with the Enterprise Turpentine and Rosin Co., which instrument of writing is recorded in vol. W., at p. 201, eqc., of the records of deeds of the county of Hancock, state of Mississippi." She also makes the assignment of this lease an exhibit to her bill, as also the lease itself; and this lease, the basis of the contentions, is as follows, the italics being ours:

. "Roderick Seal to Enterprise Turpentine & Rosin Co.

"*State of Mississippi, county of Hancock.*

"This *indenture* made this 23rd day of November, 1898, between Roderick Seal, *of the county of Harrison, and state of Mississippi,* of the first part, and the *Enterprise Turpentine and Rosin Company of the county of Hancock, and state of Mississippi,* of the second part:

"Witnesseth that the said party of the first part *for and in consideration of the sum of* $350, to him in *hand paid,* at and before the ensealing and delivery of these presents the receipt whereof is *hereby acknowledged, and of the further sum to make the amount of six dollars per* 1000 for all boxes cut, *to be paid* as follows: When boxes are cut and counted.

"Has *granted, bargained, and leased and conveyed, and* does by these presents, grant, bargain, lease, and convey, unto the said party of the second part *their heirs and assigns at the rate* of six dollars per 1000 boxes *all* of the *timber* upon the following described tract of land *for the purpose of boxing, working, and using said timber* for turpentine purposes.

"[Here the land is described as in the bill, the description being perfect except that no state or county is given.]

"*To have and to hold, box, work, and use for turpentine purposes* unto the said party of the second part their *heirs and assigns.* And it is hereby expressly covenanted and agreed that the said party of the second part may commence boxing, working, and using the said timber for turpentine purposes or any portion thereof *at any time that the said party of the second part may desire, and* shall have the right to *continue* to box, work, and use the said timber and every portion thereof *for the full term of three years* beginning with reference to each portion of the timber, from the time only that the boxing and working of each portion is *commenced,* it being the intention of the parties that this *lease* shall *continue* to operate until all of the timber and each and every part thereof has been boxed, worked, and used for turpentine purposes for *the full period of three years.* And it is hereby further covenanted and agreed that the said party of the second part their heirs and assigns shall have the

86 Miss.—2

free and unrestricted right to enter upon, occupy, and use the said land for the purpose of boxing, working, and using the timber thereon for turpentine purposes as aforesaid during the continuance *of this lease.* And it is further covenanted and agreed that said party of the second part may have the right at any time to *assign* this lease in whole or in part, and that any assignee of *this lease* shall have *the same right of assignment* and that all the rights and privileges of said party of the second part shall vest in whomsoever may succeed to the interest hereby conveyed to said party of the second part. And the said party of the first part for his heirs, executors, and administrators the *said granted and leased timber* with the right to box, work, and use the same *for turpentine purposes* unto the said party of the second part *their heirs and assigns* will *forever warrant and defend.*"

This instrument appears to be duly signed and acknowledged before a clerk of a court of Hancock county, and to have been filed for record and recorded in that county (Hancock), in which the bill shows the lands claimed lie.

It is set up and urged that this instrument is void: (1) For uncertainty in not locating the land in any county or state. (2) Because it seeks to create a perpetuity in not stating the time of the commencement and ending of the right sought to be granted. (3) If good, the appellees waited nearly five years —an unreasonable time—to begin. (This is denied in the answer, which avers the commencement within two years, and before J. I. Ford conveyed). (4) That the instrument is a mere license, and that Seal's death revoked it, it not being coupled with an interest, as it is said.

The answer affirms that the lease sufficiently shows the state and county; asserts appellant's purchase with full notice of the lease and of the situation of the land; denies that the lease is vague or uncertain; asserts that the lands in controversy are the only lands in the United States to which the description could apply, and are in Hancock county; that Seal owned no other

lands to which the description could apply, and that appellant knew it applied to them; denies that the boxing did not begin until the spring previous to the filing of the bill, but, on the contrary, avers that it began more than two years before, and that, when appellant bought, appellees were in possession under the lease, and had already boxed and were operating for turpentine when the bill was filed; avers that since Seal's death his administratrix has been paid the balance for the lease over the $350 paid to Seal, and that she has applied it to the payment of his debts; and that she applied for and got a decree for the sale of the lands to further pay his debts, and in her petition for sale described these lands as being under the lease; and that at the sale Ford bought, and that he conveyed to Marble, his conveyance reciting that it was subject to the lease, and so the administratrix and heirs recognized its location; and that, but for the lease, they would have brought a far higher price at the sale. Appellant offered no testimony on her part. Appellees offered the lease and the petition for sale in the administration of Seal's estate, which recites the existence of the lease. They offered then the decree of sale, report of sale showing the purchase by Ford, the confirmation of sale, and the conveyance of Ford to Marble, which conveyance recites that it was made "subject to a lease for turpentine purposes made by Roderick Seal on the above lands as shown on the records of said county." The case was heard on the pleadings and this evidence for appellees, and the chancellor decreed that "there is no merit in said bill, and the same is hereby dismissed at the cost of complainant."

In *Howe* v. *Williams,* 51 Mo., 252, it is held that the omission to name the state or county in which the lands lie does not make a deed incompetent as evidence. The reason given is that, as in the case before us, the lands were found to be in the county, the instrument executed there, the acknowledgment taken before an officer of that county, and its recordation in that county. We have all this here, and, additionally, the words "State

of Mississippi, county of Hancock," at the head of the convey-ance. In *Norfleet* v. *Russell,* 64 Mo., 176, it was held that the omission did not make the deed inadmissible. *Garden City Sand Co.* v. *Miller,* 157 Ill., 225–232 (41 N. E., 753, 755), ad-mitted a deed omitting the meridian, state, and county, where it appeared that the parties resided in the county, that the acknowl-edgement was made there, and possession taken by grantee. The court in that case says, "Any fact or circumstance by which the mind is convinced as to what tract was intended to be conveyed will be resorted to, instead of treating the description as a patent ambiguity," and authorities are cited from Iowa, Wisconsin, Michigan, and Illinois. *Lloyd* v. *Bunce,* 41 Iowa, 660–667, holds that a deed omitting town, county, and state conveyed, nevertheless, an equitable interest, and the intention could be otherwise shown. In *Webb* v. *Mullins,* 78 Ala., 111–115, it was held that a deed omitting county, state, and meridian was, nev-ertheless, admissible, on the ground that the court judicially knew that the description could not apply to any other land in the state of Alabama. In *Hawkins* v. *Hudson,* 45 Ala., 482–494, it was held that the omission of the county is "but a latent ambiguity, and may be supplied by parol proof." To the same purport are *Atkison* v. *Dixon,* 70 Mo., 381–393, and *Mee* v. *Benedict,* 98 Mich., 260 (57 N. W., 175; 22 L. R. A., 641; 39 Am. St. Rep., 543); *Tregent* v. *Whiting,* 14 Mich., 77; *Calton* v. *Lewis,* 119 Ind., 181 (21 N. E., 475); *Beal* v. *Blair,* 33 Iowa, 318; *Russell* v. *Sweezey,* 22 Mich., 236. See, also, 13 Cyc., 549, and the cases cited in the notes. Other authori-ties might be added, but we need not protract, as these and their citations suffice as to other states. In our own state, *Hanna* v. *Renfro,* 32 Miss., 125–128, was a case where the deed omitted the county and state. The court there said: "This was no ground of objection to the introduction of the deed as evidence. It was but a latent ambiguity, which was susceptible of expla-nation; and if not explained and rendered certain by other evi-dence, it would have been proper to move to exclude the deed

for want of certainty and of identity of the land referred to in it with the premises sued for." It will be noted that this was in an action of ejectment. In the same line is *Peacher* v. *Strauss.* 47 Miss., 353. These do not seem in conflict with *Haughton* v. *Sartor,* 71 Miss., 357 (15 South. Rep., 71), where the range is omitted. But on the record before us it is not imperative that we should take position alone on the question involved in any of these cases. Here we find, in addition, the location of the land fixed by the petition of the administratrix of Seal's estate for the sale, and by the conveyance of Ford to Marble and the conveyance of Marble to appellant, and by the fact of the occupancy of the land by appellees at the time of appellant's purchase. All this, taken in connection with the fact that appellees must claim under Ford's deed, which conveys subject to the lease, and the conclusion is plain that Mrs. Gex cannot avoid it.

We cannot support the position that the lease is void as tending to create a perpetuity, in that it does not give the date when the right it grants shall begin and end. We have examined all the authorities cited in the briefs of counsel. Under them we think the most that can be claimed, if it can be, is that the work must commence in a reasonable time, and in this case we think it did commence in a reasonable time. This record does not show a lapse of thirteen years, as in cases cited, before the beginning, but not quite two years. This conclusion does not make it necessary to decide whether or not, in this case, the delay, to be unreasonable, must pass the period of the statute of limitations.

As to the ground that the lease, as it is denominated in the pleadings, is a mere license, and that the death of Seal revoked it, we refer to it merely to compliment the force and ingenuity of counsel and to indicate our non-concurrence. The lease was for value, a part of which was paid in cash and the balance since paid to the administratrix, and it conveyed the timber and right of way for the purpose of exercising the privilege of box-

ing, and the parties put in possession, and there is an end of it, as we think.

*Affirmed.*